428 F.Supp. 555 (1977)
JACKSON SAWMILL COMPANY, INC., et al., Plaintiffs,
v.
The UNITED STATES of America et al., Defendant.
No. 76-596C(3).
United States District Court, E. D. Missouri, E. D.
March 11, 1977.
*556 *557 Kenneth F. Teasdale, Larry B. Luber and John H. Quinn, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for plaintiffs.
Bruce A. Ring, Jefferson City, Mo., and Thomas H. Pearson, Kirkwood, Mo., for defendants State Highway Com'n of Mo., and Jack Curtis, individually and as Chairman of the State Highway Com'n of Mo.
Jim D. Keehner, Asst. Atty. Gen. of Ill., East St. Louis, Ill., for defendants the Honorable Daniel Walker, Governor of State of Ill.; Langhorne M. Bond, individually and as Secretary of the Dept. of Transp. of State of Ill., and Dept. of Transp. of State of Ill.
Myron Gollub, St. Louis, Mo., and Glenn A. Altman, Belleville, Ill., for defendants The City of East St. Louis and William Mason, individually and as Mayor of the City of East St. Louis.
Barry A. Short, U. S. Atty., Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for defendants U. S. and the Honorable William T. Coleman.

MEMORANDUM
WANGELIN, District Judge.
This matter, pleaded in nine counts, is before the Court upon the motions of defendants to dismiss. The suit is based upon the following set of facts which are largely undisputed.
Plaintiffs are holders of bonds issued by the City of East St. Louis, Illinois. These bonds were used to finance improvements on the Veterans Memorial Bridge, now known as the Dr. Martin Luther King Bridge (hereinafter referred to as the M.L.K. Bridge). The M.L.K. Bridge spans the Mississippi River between St. Louis, Missouri, and East St. Louis, Illinois. Plaintiffs purchased the bonds in 1956 pursuant to a trust agreement executed by the City of East St. Louis. The agreement provided, inter alia, that all principal and interest payments would be satisfied from tolls and other revenues derived from the bridge.
In 1967, the Poplar Street Bridge, a free bridge, was opened near the M.L.K. Bridge. The Poplar Street Bridge has diverted substantial traffic volume away from the M.L.K. Bridge, reducing tolls collected. By January 1, 1974, the revenues derived from the M.L.K. Bridge were insufficient to meet the principal payments on plaintiffs' bonds and a default occurred. Since that time the *558 bonds have been in default on both principal and interest payments.
Plaintiffs have petitioned this Court to order defendants to initiate condemnation proceedings against the M.L.K. Bridge, acquire it, and pay compensation to plaintiffs for their interest.[1] For the reasons stated below, defendants' motions to dismiss Counts I through VII and IX will be granted and the motions to dismiss Count VIII will be denied.
In Count I of their complaint plaintiffs have asserted that the construction of the Poplar Street Bridge, and the consequent diversion of traffic from the M.L.K. Bridge constituted a taking of property without just compensation. Essentially this is a claim for inverse condemnation. Plaintiffs assert that they have a property right in the traffic crossing the M.L.K. Bridge.
Obviously traffic is necessary to generate revenue to meet the obligations on the bonds. However, the law is clear in Missouri and Illinois that plaintiffs do not have a constitutionally protected property right in traffic. Thus, the diversion of traffic is not a compensable taking under the due process requirements of the Illinois, Missouri and United States constitutions. Kansas City v. Berkshire Lumber Co., 393 S.W.2d 470 (Mo.1965); State v. Brockfeld, 388 S.W.2d 862 (Mo. en banc 1965); Department of Public Works and Buildings v. Wilson & Co., 62 Ill.2d 131, 340 N.E.2d 12 (1975); County of Winnebago v. Rico Corp., 11 Ill.App.3d 882, 296 N.E.2d 867 (1973). Cf. Charles River Bridge v. Warren Bridge, 36 U.S. (11 Peters) 420, 9 L.Ed. 773 (1837).
Most of these cases deal with abutting landowners to highway systems and not bondholders. However, this does not change the basic premise that there is no property right or vested interest in a continuing flow of traffic. Plaintiffs have cited no cases even remotely supporting their position. Defendants' motions to dismiss Count I will be granted.
Count II of plaintiffs' complaint seeks an order compelling defendants to condemn, acquire, and maintain the M.L.K. Bridge under 23 U.S.C. § 104(b) and Ill.Rev. Stat., c. 121, § 102-1 et seq. (1975). Section 104(b) provides for the apportionment of sums of money for expenditures on the various Federal-aid highway systems. Section 104(b) does not authorize or direct the expenditure of the money apportioned for specific projects, and thus does not provide for the relief that plaintiffs seek.[2] Defendants' motions to dismiss Count II will thus be granted.
In Count III of their complaint plaintiffs seek an order compelling defendants to designate the M.L.K. Bridge as a part of the Federal-aid urban system under 23 U.S.C. § 103(d)(1), take the bridge by condemnation, and pay the bondholders for their interests. The M.L.K. Bridge has been designated as a part of the Federal-aid urban system since 1969. Section 103(d)(1) does not authorize the expenditure of funds or condemnation of bridges. This section only sets out guidelines for the designation of a bridge as a part of the Federal-aid urban system making it eligible for participation in projects proposed under 23 U.S.C. § 105. Section 103(d)(1) does not authorize the relief sought and defendants' motions to dismiss Count II will be granted.
In Count IV plaintiffs seek to compel defendants to retire the bonds and assume management of the M.L.K. Bridge under 23 U.S.C. § 122. That section authorizes a state to make claims for payment out of sums apportioned to it under the Federal-aid system. The section only authorizes claims for expenditures actually used to make principal payments on bonds, the proceeds from which were expended on Federal-aid projects. As a matter of law, *559 § 122 cannot apply to this case. Expenditures on the M.L.K. Bridge from the proceeds of the bonds held by plaintiffs were made prior to the enactment of § 122 and prior to the designation of the M.L.K. as a part of the Federal-aid urban system. Therefore, no proceeds of plaintiffs' bonds "have been actually expended in the construction" of a Federal-aid project. Section 122 makes no provision for retroactive application.
Further, even if retroactive application were possible, the section provides that states "may claim" payment. This language vests discretion with the administrative officers of the various states. It is a long settled doctrine that courts will not direct the performance of discretionary acts by administrative officials. Wilbur v. United States, 281 U.S. 206, 50 S.Ct. 320, 74 L.Ed. 809 (1930); X (Bryant) v. Carlson, 363 F.Supp. 928 (E.D.Ill.1973); Langston v. Ciccone, 313 F.Supp. 56 (W.D.Mo.1970). Defendants' motions to dismiss Count IV will be granted.
Count V of plaintiffs' complaint is based upon the Special Bridge Replacement Program, 23 U.S.C. § 144. Under that statute states may apply to the Secretary of Transportation for assistance in replacing a bridge which the Secretary has found to be in need of replacement.
Plaintiffs seek an order compelling the state defendants to make application to the Secretary and compelling the Secretary to approve such application for the replacement of the M.L.K. Bridge. Again, there is no authorization in this statute for the relief sought. First, plaintiffs request the condemnation and acquisition of the M.L.K. Bridge and its subsequent replacement with itself, albeit with repairs. Plaintiffs assert that it would be less expensive to purchase and repair the M.L.K. Bridge than to replace it with a new bridge. Plaintiffs' concern with cost efficiency is commendable, but § 144 does not authorize the purchase and repair of existing bridges.
Furthermore, the pleadings reveal that no action has been taken by either Illinois or Missouri to seek the replacement of the M.L.K. Bridge. Nor has the Secretary of Transportation determined the need for such replacement. Section 144 places these actions by federal and state authorities within their sole discretion. Wilbur v. United States, supra. Thus, defendants' motions to dismiss Count V will be granted.
Count VI of the complaint seeks an order integrating the M.L.K. Bridge into the Federal-aid Interstate System under 23 U.S.C. § 129. The M.L.K. Bridge has been designated a part of the Federal-aid urban system and contrary to plaintiffs' reading of 23 U.S.C. § 103(d)(1), "no route on the Federal-aid urban system shall also be a route on any other Federal-aid system". Thus, the M.L.K. Bridge cannot be integrated into the Interstate System under 23 U.S.C. § 129. Count VI states no cause of action as a matter of law and will be dismissed.
Count VII of plaintiffs' complaint is based upon the Special Urban High Density Program, 23 U.S.C. § 146. Section 146 has been repealed. Act of May 5, 1976, Pub.L. No.94-280, Title I, § 128(a), 90 Stat. 440. The motions to dismiss Count VII will be granted.
Count VIII alleges that the construction of the Poplar Street Bridge was an unconstitutional impairment of plaintiffs' contract with the City of East St. Louis in violation of Article I § 10 of the United States Constitution. That section, known as the contract clause, provides: "No State shall . . . pass any . . . Law impairing the Obligation of Contracts." The 1956 Trust Agreement entered into between plaintiffs and the City of East St. Louis provides in part:
The City covenants that, until the bonds secured hereby and the interest thereon shall have been paid or provisions for such payment shall have been made, it will not construct or cause or permit (where such permission is necessary) to be constructed a bridge, any part of which lies within the corporate limits of the City, and which will, or may, divert traffic from the Veterans Memorial Bridge *560 with a resultant decrease in revenues derived from the operation of the Veterans Memorial Bridge.
Defendants have for the most part failed to address this theory of recovery in their motions to dismiss. It is clear that the contract clause is only a limitation of state powers. No cause of action based on this theory lies against the United States government. Sinking Fund Cases, 99 U.S. (9 Otto) 700, 25 L.Ed. 496 (1898); Hepburn v. Griswold, 75 U.S. (8 Wall.) 603, 19 L.Ed. 513 (1869). As to the other defendants named in Count VIII, the Court believes that plaintiffs have stated a cause of action. The Court notes that Count VIII states no claim against the State of Missouri or the Illinois State Toll Highway Authority.
Count IX of plaintiffs' complaint seeks an order under the Illinois Toll Highway Act, Ill.Rev.Stat., c. 121, § 100-1 et seq. (1975), compelling defendants to acquire the M.L.K. Bridge and retire the bonds. Section 100-8(f) of that Act prohibits the Illinois Toll Highway Authority from purchasing bridges whose bonds are in default. Thus the relief requested is not authorized by the Act and defendants' motions to dismiss Count IX will be granted.[3]
As all nine Counts of plaintiffs' complaint have been dismissed as to the Missouri defendants and the Illinois State Toll Highway Authority, those parties will be dismissed from this action. With only Count VIII remaining, the Court questions whether venue is proper. The parties are hereby ordered to brief this question for the Court. Defendants are granted ten (10) days to file suggestions and plaintiffs are granted ten (10) days from that time in which to reply.
NOTES
[1] Plaintiffs have brought this suit as a class action but the Court will not determine the propriety of that procedure at this time.
[2] Even if § 104(b) did authorize expenditures, the specific application of such expenditures would be within the sole discretion of various state administrative officials. It is a long settled doctrine that courts will not direct the performance of discretionary acts by administrative officials. See cases cited infra.
[3] Plaintiffs assert that the Illinois legislature enacted § 100-8(f) solely to avoid an obligation to purchase the M.L.K. Bridge and that such action constituted a denial of due process. The decision of whether to purchase an existing bridge, however, is vested in the discretion of the Illinois Toll Highway Authority. Ill.Rev. Stat. c. 121, § 100-32 (1975). Thus the Illinois Toll Highway Act did not grant plaintiffs a vested right to have their interests purchased. Under these circumstances there could be no denial of due process as a matter of law.