580 F.2d 302
 JACKSON SAWMILL COMPANY, INC., a corporation, Allen G.
Bohmer, Dr. Paul T. Scoggins, and the Reverend
Daniel D. McKee, Appellants,
v.
The UNITED STATES of America, the Honorable William T.
Coleman, Individually and as Secretary of Transportation of
the United States, the Honorable Daniel Walker, Governor of
the State of Illinois, Langhorne M. Bond, Individually and
as Secretary of the Department of Transportation of the
State of Illinois, the Department of Transportation of the
State of Illinois, the City of East St. Louis, William
Mason, Individually and as Mayor of the City of East St.
Louis, Jack Curtis, Individually and as Chairman of the
State Highway Commission of Missouri, the State Highway
Commission of Missouri, the Illinois State Toll Highway
Authority, the Honorable Joseph Teasdale, Governor of the
State of Missouri, the State of Missouri and the State of
Illinois, Appellees.
 No. 77-1768.
 United States Court of Appeals,
Eighth Circuit.
 Submitted April 11, 1978.
Decided July 12, 1978.
 
 Kenneth F. Teasdale, Armstrong, Teasdale, Kramer & Vaughan, St. Louis, Mo., for appellant; by Richard A. Oertli and Timothy K. Kellett, St. Louis, Mo., on brief.
 Paul J. Bargiel, Asst. Atty. Gen., Chicago, Ill., for appellees, State of Illinois, et al.; William J. Scott, Atty. Gen., Stephen R. Swofford, and Patricia Rosen, Asst. Attys. Gen., Chicago, Ill., on brief.
 Andrew Vrtjak, Asst. Atty. Gen., Oakbrook, Ill., for appellee, Illinois State Toll Highway Authority; William J. Scott, Atty. Gen., Chicago, Ill., and Walter K. Pyle, Asst. Atty. Gen., Oakbrook, Ill., on brief.
 Thomas M. Pearson, Asst. Counsel, Missouri State Highway Commission, Kirkwood, Mo., for Missouri appellees; John D. Ashcroft, Atty. Gen., and J. Paul Allred, Asst. Atty. Gen., Jefferson City, Mo., Bruce A. Ring, Chief Counsel, State Highway Bldg., Jefferson City, Mo., on brief.
 Joseph B. Moore, Asst. U. S. Atty., St. Louis, Mo., for Federal appellees; Robert D. Kingsland, U. S. Atty., St. Louis, Mo., on brief.
 Before BRIGHT and ROSS, Circuit Judges, and TALBOT SMITH, Senior District Judge.*
 BRIGHT, Circuit Judge.
 
 
 1
 Holders of municipal bonds issued by the City of East St. Louis, Illinois (the City), brought this class action against several federal, state, and local government entities after the City defaulted on the bonds. The district court[1] dismissed the bondholders' second amended complaint under Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. The bondholders then brought this appeal. The basic issue raised on appeal is whether the dismissal was premature given the liberal construction of pleadings mandated by the Federal Rules of Civil Procedure. This question necessarily implicates two considerations: (a) whether the state defendants are entitled to absolute immunity under the eleventh amendment, and (b) whether the complaint states a cause of action against the other defendants, assuming all the allegations in the complaint are true.
 
 
 2
 I. Background.
 
 
 3
 The bondholders alleged the following facts in their complaint. In the early 1950's, traffic volume increased substantially between the cities of St. Louis, Missouri, and East St. Louis, Illinois, connected by bridges across the Mississippi River. In spite of the burgeoning problem, the states of Illinois and Missouri and the United States failed or refused to build new bridges.
 
 
 4
 The City determined, however, that it would construct an expressway extension on the eastern approach of the Veterans Memorial Toll Bridge (subsequently renamed the Martin Luther King Toll Bridge, to which we refer as the King Bridge) in order to ease the traffic problem on its side of the river. To implement the improvements, the City entered into an agreement with the Department of Transportation of the State of Illinois that called for the City to pay for a portion of these highway improvements and Illinois to pay for the remainder. The City was also encouraged to make the improvements by the State of Illinois and the United States, which arranged to include the expressway extension in the Interstate Highway System.
 
 
 5
 In order to finance the City's portion of the construction cost of the extension and to refinance bonds previously issued to build the bridge,[2] the City, as authorized by Illinois law, executed a trust agreement with the St. Louis Union Trust Company providing for the issuance of $15.5 million worth of municipal bonds. According to the appellants, the trust agreement expressly provided that the toll rates of the bridge would be subject to regulation by the United States and that the United States had participated in an agreement with the Department of Transportation of Illinois and the City to provide for construction of the extension. Finally, the trust agreement called for payment of both principal and interest on the bonds wholly from tolls and other bridge revenues but stipulated that the City would not permit construction of a rival bridge within the city limits that would divert traffic and diminish revenues. Relying on the latter guarantee and the actions and implied good faith of the City, the State of Illinois, and the United States, the appellants purchased the City's bonds.
 
 
 6
 At some time after January 1, 1956, however, defendant city, state, and federal governments determined to build a new bridge across the Mississippi connecting St. Louis and East St. Louis. This bridge, the Poplar Street Bridge, opened on November 10, 1967, and was constructed in such a manner that it was easily accessible from all of the major federally-financed highways leading to East St. Louis. Traffic over the King Bridge diminished, and by January 1, 1974, declining revenue forced the City to default on the bridge bonds.
 
 
 7
 The bondholders thereafter commenced the present class action on June 30, 1976, against the City, the States of Illinois and Missouri, the United States, and several state, local, and federal officials. For relief, the bondholders sought
 
 
 8
 an order compelling defendants to condemn the MLK Bridge and to compensate the bondholders thereof, and to take over and to integrate said MLK Bridge into the interstate traffic needs of the cities of St. Louis and East St. Louis and the surrounding areas in the State of Illinois and Missouri; or in the alternative for damages suffered as a result of defendants' actions in the sum of the principal and interest owed as of the date of judgment; and for an order for reasonable attorney's fees and costs of court.
 
 
 9
 This appeal follows from the district court's dismissal, on August 4, 1977, of bondholders' second amended complaint for failure to state a claim on which relief can be granted under Rule 12(b)(6).
 
 
 10
 II. The Issues.
 
 
 11
 The dismissed complaint contained two causes of action.[3] Count I was an inverse condemnation claim apparently premised on the fifth and fourteenth amendments and the state constitutional counterparts:
 
 
 12
 By means of the above-stated acts of the defendants various harm, damages and wrongs have been suffered by the plaintiffs and the plaintiffs have been denied their property without receiving just compensation, without having received due process, and without having had their property condemned, all in violation of the Constitution and the Statutes of the United States of America and the State of Illinois and the State of Missouri. Plaintiffs have no adequate remedy at law.
 
 
 13
 Count II was an impairment of contract claim, basically resting on article I, section 10, of the Constitution (as against the state and local defendants) and incorporation of article I, section 10, by the fifth amendment (as against the federal defendants):
 
 
 14
 Plaintiffs allege and state that as authorized by the Constitution and Statutes of the State of Illinois, the City of East St. Louis contractually covenanted with the plaintiffs in the Trust Agreement of January 1, 1956 that it would not contract or cause or permit the construction of a bridge any part of which would lie within the corporate limits of the City, and which would or might divert traffic from the MLK Bridge with a resultant decrease in revenues derived from the operation of the MLK Bridge. After the City of East St. Louis entered into such a covenant with plaintiffs, the State of Illinois expressly ratified, validated and confirmed said covenant, and all other obligations attendant to the revenue bonds now held by plaintiffs, by enacting Section 10-809 of Chapter 121 of the Illinois Revised Statutes. As a consequence, the subsequent enactments, appropriations and actions of the City of East St. Louis, the State of Illinois and the other Illinois defendants, and the State of Missouri and the other Missouri defendants, and the United States and other federal defendants, permitting creating or encouraging the construction of a bridge within the boundaries of the city limits of East St. Louis, are void and in violation of the Constitution of the United States, specifically Article one, Section Ten, and the Fifth and Fourteenth Amendments thereto, and the Constitution of the State of Illinois, specifically Article One, Section Sixteen, and the Constitution of Missouri, specifically Article One, Section Thirteen, as impairing the obligation of a contract.
 
 
 15
 We now consider whether the district court was justified in dismissing both of these causes of action based on the pleadings. In reviewing the dismissal of the complaint under Rule 12(b)(6), we are mindful of the Supreme Court's admonition in Conley v. Gibson, 355 U.S. 41, 45-46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957):
 
 
 16
 (A) complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.
 
 
 17
 We also note a summary of the applicable rule of law in Bramlett v. Wilson, 495 F.2d 714, 716 (8th Cir. 1974):
 
 
 18
 (A) complaint should not be dismissed merely because a plaintiff's allegations do not support the particular legal theory he advances, for the court is under a duty to examine the complaint to determine if the allegations provide for relief on any possible theory. Nor should a complaint be dismissed that does not state with precision all elements that give rise to a legal basis for recovery. Finally, a complaint should not be dismissed merely because the court doubts that a plaintiff will prevail in the action. That determination is properly made on the basis of proof and not merely on the pleadings.
 
 
 19
 The question, therefore, is whether in the light most favorable to the plaintiff, the complaint states any valid claim for relief. Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief. (Citations omitted.)
 
 
 20
 A. The Inverse Condemnation Claim.
 
 
 21
 1. Against the United States.
 
 
 22
 Appellants' theory of recovery against the United States[4] for deprivation of property without just compensation rests on the fifth amendment of the United States Constitution, which provides in pertinent part that
 
 
 23
 private property (shall not) be taken for public use, without just compensation.
 
 
 24
 The district court dismissed this claim against the United States because
 
 
 25
 the law is clear in Missouri and Illinois that plaintiffs do not have a constitutionally protected property right in traffic. Thus, the diversion of traffic is not a compensable taking under the due process requirements of the Illinois, Missouri and United States constitutions. Kansas City v. Berkshire Lumber Co., 393 S.W.2d 470 (Mo.1965); State v. Brockfeld, 388 S.W.2d 862 (Mo. en banc 1965); Department of Public Works and Buildings v. Wilson & Co., 62 Ill.2d 131, 340 N.E.2d 12 (1975); County of Winnebago v. Rico Corp., 11 Ill.App.3d 882, 296 N.E.2d 867 (1973). Cf. Charles River Bridge v. Warren Bridge, 36 U.S. (11 Peters) 420, 9 L.Ed. 773 (1837).
 
 
 26
 Most of these cases deal with abutting landowners to highway systems and not bondholders. However, this does not change the basic premise that there is no property right or vested interest in a continuing flow of traffic. Plaintiffs have cited no cases even remotely supporting their position. Defendants' motions to dismiss Count I will be granted.[5] (Jackson Sawmill Co. v. United States, 428 F.Supp. 555, 558 (E.D.Mo.1977).)
 
 
 27
 In support of the argument that the district court improperly dismissed the inverse condemnation claim against the United States, appellants contend that the court misconstrued the issue as a question of law rather than as a question of fact. Appellants view the issue as not whether diversion of traffic constitutes a compensable taking but rather whether diversion of traffic caused direct damage to their vested property rights. As such, according to appellants, the question is factual rather than legal. Appellants cite for support of their contention United States v. Central Eureka Mining Co., 357 U.S. 155, 168, 78 S.Ct. 1097, 1104, 2 L.Ed.2d 1228 (1958), where the Supreme Court stated:
 
 
 28
 Traditionally, we have treated the issue as to whether a particular Governmental restriction amounted to a constitutional taking as being a question properly turning upon the particular circumstances of each case. (Emphasis added.)
 
 
 29
 Finally, appellants argue that the district court completely failed to address their contentions that they possessed at least four other property interests: an exclusive franchise, an easement, a lien, and various vested contract rights.
 
 
 30
 Although it is true that whether a particular government restriction amounts to a constitutional taking normally turns on the facts of each case, here the government action did not "restrict." The federal government simply helped build and finance a new bridge. It took nothing, directly or indirectly, that belonged to the appellants. The fifth amendment
 
 
 31
 has always been understood as referring only to a direct appropriation, and not to consequential injuries resulting from the exercise of lawful power. It has never been supposed to have any bearing upon, or to inhibit laws that indirectly work harm and loss to individuals. (Legal Tender Cases, 79 U.S. (12 Wall.) 457, 551 (1870).)
 
 
 32
 In this case, appellants possessed no constitutionally protected interest in a monopoly over traffic travelling between St. Louis and East St. Louis. Whether they choose to label their interest a "franchise," an "easement," a "lien," or simply as a "contract right" matters little. Under no interpretation of the facts, no matter how we strain to be favorable to their claim, do appellants have anything more than two covenants issued by the City of East St. Louis. The covenants entitle them to an exclusive right to revenues from the King Bridge and stipulate that the City will not voluntarily permit the construction of a bridge that interferes with appellants' revenue rights. The United States acquired no property interest from appellants entitling them to compensation regardless of the label attached to the appellants' contract rights with the City.
 
 
 33
 2. Against the States of Missouri and Illinois.
 
 
 34
 Appellants' inverse condemnation claim against the States of Illinois and Missouri was premised on the fourteenth amendment's absorption of the Just compensation clause of the fifth amendment. The district court dismissed the claim against both states relying on the eleventh amendment bar:
 
 
 35
 The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.
 
 
 36
 Analyzing the district court's ruling requires a three-tiered approach: First, we must determine which of the various defendant-government entities qualify as a state or an alter-ego of the state; second, we must decide whether or not the eleventh amendment applies to the cause of action brought by the bondholders; and third, we must assess whether affected defendants have waived the eleventh amendment immunity.
 
 
 37
 a. Qualification as a "State."
 
 
 38
 By its terms, the eleventh amendment only applies to suits against a state by citizens of another state.[6] In addition to the States of Missouri and Illinois, however, several state officials and agencies are named as defendants.[7] Appellants argue that the district court erred by giving the officials and agencies the same eleventh amendment immunity applicable to the states. In particular, appellants note that the district court failed to consider any of the several factors customarily used to determine if a particular state agency should be entitled to share the state's eleventh amendment immunity. They cite Fitzpatrick v. Bitzer, 519 F.2d 559, 564-65 (2d Cir. 1975), Rev'd on other grounds, 427 U.S. 455, 96 S.Ct. 2666, 49 L.Ed.2d 614 (1976):
 
 
 39
 In determining whether a separate state agency or institution shares the Eleventh Amendment shield as an "alter ego" of the state, a court must look to numerous factors, no one of which is conclusive, see Krisel v. Duran, 258 F.Supp. 845, 848-49 (S.D.N.Y.1966) (Weinfeld, J.), Affd. per curiam, 386 F.2d 179 (2d Cir. 1967), Cert. denied, 390 U.S. 1042, 88 S.Ct. 1635, 20 L.Ed.2d 303 (1968); Zeidner v. Wulforst, 197 F.Supp. 23 (E.D.N.Y.1961); cf. State Highway Comm'n v. Utah Const. Co., 278 U.S. 194, 199, 49 S.Ct. 104, 73 L.Ed. 262 (1929). The most important, of course, is whether, in the event plaintiff prevails, judgment will have to be paid out of the state treasury. Whitten v. State University Const. Fund, 493 F.2d 177, 180 (1st Cir. 1974) (Moore, J.); Gordenstein v. University of Delaware, 381 F.Supp. 718, 721 (D.Del.1974); Bowen v. Hackett, supra; Krisel v. Duran, supra, 258 F.Supp. at 849; see Edelman v. Jordan, supra, 415 U.S. at 663, 94 S.Ct. 1347. Also to be considered is whether the entity sued is performing a governmental or proprietary function, whether it has been separately incorporated, whether it has the power to sue and be sued and enter into contracts, the degree of autonomy over its operations, and whether the state has immunized itself from responsibility for the agency's operations. See Whitten v. State University Const. Fund, supra, 493 F.2d at 179-80; Gordenstein v. University of Delaware, supra; Krisel v. Duran, supra.
 
 
 40
 Although the district court did not explicitly discuss this issue in its memorandum decision, we are convinced that it was correct in assuming, Sub silentio, that the various state agencies and officials were entitled to share in the states' eleventh amendment immunity, if any.[8] The key, of course, is who will pay for any judgment rendered in favor of appellants. "(W)hen the action is in essence one for the recovery of money from the state, the state is the real, substantial party in interest * * *." Ford Motor Co. v. Department of Treasury of Indiana, 323 U.S. 459, 464, 65 S.Ct. 347, 350, 89 L.Ed. 389 (1945). In this case, it is beyond dispute that the states will pay for any judgment rendered against defendant state officials and agencies.[9]
 
 
 41
 b. Applicability of the Eleventh Amendment.
 
 
 42
 On its face, the eleventh amendment appears to bar "any suit in law or equity" commenced against a state by citizens of another state. In Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), however, the Supreme Court ruled that the eleventh amendment does not bar a suit to enjoin enforcement by state officers of an unconstitutional state statute. In reaching this result, the court relied on the legal fiction that a state officer acting illegally is deemed to act without the authority of the state and therefore outside its shield of sovereign immunity.
 
 
 43
 In Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 662 (1974), the Court further clarified the distinction it introduced in Ex parte Young. There the Court ruled that the eleventh amendment bars any suit seeking a retroactive award of monetary damages payable out of the state treasury as compensation for a past breach of legal duty. The Court did note, however, that actions seeking injunctive relief are permissible even if they require the state to expend some public funds in implementing relief and thus even if the award has "an ancillary effect on the state treasury." Id. at 668, 94 S.Ct. at 1358.
 
 
 44
 In the present case, the district court held that:
 
 
 45
 The relief sought in this case is like the retroactive payments in Edelman. An order requiring defendants to condemn the MLK Bridge would result in the purchase of defendants' bonds by the states. This would clearly be a payment of funds by the states to plaintiffs to compensate for past acts.
 
 
 46
 We agree and in doing so reject appellants' argument that deciding whether relief is either permitted by Ex parte Young or barred by Edelman cannot be done without full development of the case at trial. In this case, the answer plainly hinges on the prayer for relief in appellants' complaint. They are seeking
 
 
 47
 an order declaring that said enactments, appropriations and actions constitute an unconstitutional impairment of plaintiffs' entitlement to the obligation of a contract; and for an order compelling defendants to condemn the MLK Bridge and to compensate the bondholders thereof, and to take over and to integrate said MLK Bridge into the interstate traffic needs of the cities of St. Louis and East St. Louis and the surrounding areas in the State of Illinois and Missouri; or in the alternative for damages suffered as a result of defendants' actions in the sum of the principal and interest owed as of the date of judgment; and for an order for reasonable attorney's fees and costs of court.
 
 
 48
 The prayer for relief in part asks for damages for past wrongful actions and, as we have already noted, the eleventh amendment expressly bars that remedy. It also appears to ask for equitable relief an injunction or mandamus directing the defendants to condemn the King Bridge, acquire it, and pay off the bondholders. This is but another verbalization of the claim for damages, however, and does not fall under the Edelman exception for injunctive relief. Appellants are asking for nothing more than that the defendants buy their "claims," which consist of the sums owed them by the bankrupt bridge. The Edelman proscription of retroactive damage payments would become a Reductio ad absurdum if this action were permitted.
 
 
 49
 c. Waiver.
 
 
 50
 Even though we have ruled that the state defendants are entitled to eleventh amendment protection, the law is well settled that a state may waive its immunity. See Clark v. Barnard, 108 U.S. 436, 447, 2 S.Ct. 878, 27 L.Ed. 780 (1883). The district court found no waiver by any of the state defendants:
 
 
 51
 Recent cases construing the waiver doctrine have limited it to cases where a clear congressional intent to limit a state's sovereign immunity can be shown. Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri, supra. The doctrine has no application to the facts of this case. "The threshold fact of congressional authorization to sue a class of defendants which literally includes states is wholly absent." Edelman v. Jordan, 415 U.S. at 672, 94 S.Ct. 1347, 39 L.Ed.2d 662.
 
 
 52
 This case is clearly distinguishable from Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), cited by plaintiffs. In that case Congress had approved a compact between the defendant states authorizing suits against the bridge authority. No such congressional action is present here. In sum, the Illinois and Missouri defendants must be dismissed from this action. This reasoning also applies to the individual defendants who are officials of the state.
 
 
 53
 Again, we agree with the district court. It is true that
 
 
 54
 when a State leaves the sphere that is exclusively its own and enters into activities subject to congressional regulation, it subjects itself to that regulation as fully as if it were a private person or corporation. (Parden v. Terminal Railway of the Alabama State Docks Department, 377 U.S. 184, 196, 84 S.Ct. 1207, 1215, 12 L.Ed.2d 233 (1964).)
 
 
 55
 In order for waiver to occur, however, more than mere operation of an interstate bridge must occur. There must be some clear indication of congressional intention to condition state entry into the field upon waiver of immunity. For example, the Supreme Court in Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959), found an express waiver of immunity in the language of an interstate compact read in combination with a condition attached by Congress when it approved the compact. In Employees of the Department of Public Health and Welfare of Missouri v. Department of Public Health and Welfare of Missouri, 411 U.S. 279, 93 S.Ct. 1614, 36 L.Ed.2d 251 (1973), the Supreme Court found no waiver after carefully reviewing the applicable federal legislation. As the court in Intracoastal Transportation, Inc. v. Decatur County, 482 F.2d 361, 365 (5th Cir. 1973) stated:
 
 
 56
 It is no longer sufficient merely to show that a State has entered a federally regulated sphere of activity and that a private cause of action is created for violating the applicable federal provision, but in addition the private litigant must show that Congress expressly provided that the private remedy is applicable to the States.
 
 
 57
 None of the statutory provisions cited by appellants[10] even remotely suggest that participating states waive their eleventh amendment immunity to lawsuits such as the present one.[11] See, e. g., Daye v. Commonwealth of Pennsylvania, 483 F.2d 294 (3d Cir. 1973), Cert. denied, 416 U.S. 946, 94 S.Ct. 1956, 40 L.Ed.2d 298 (1974); Red Star Towing and Transportation Co. v. Department of Transportation of the State of New Jersey, 423 F.2d 104 (3d Cir. 1970).
 
 
 58
 In sum, we find that, at least insofar as the inverse condemnation claim goes, the state defendants have retained their eleventh amendment immunity and the district court properly dismissed that action against the states.
 
 
 59
 3. Against the City and Mayor of East St. Louis.
 
 
 60
 The district court, after noting that the eleventh amendment did not apply to the City and its mayor, William Mason, dismissed the inverse condemnation claim against these defendants on the same grounds that it had relied on in dismissing the United States as a defendant: failure to establish a constitutionally protected interest. For the reasons set out in part II(A)(1) of this opinion, we affirm this ruling by the district court.[12]
 
 
 61
 B. Impairment of Contract Claim.
 
 
 62
 1. Against the United States.
 
 
 63
 Appellants' theory of recovery against the United States under this count was that the actions of the United States in the construction of the Poplar Street Bridge "impaired" the contract between appellants and the City of East St. Louis in violation of article I, section 10, of the United States Constitution:
 
 
 64
 No State shall * * * pass any * * * law impairing the Obligation of Contracts * * *.
 
 
 65
 The district court dismissed the action as against the United States because article I, section 10, applies only to the states. Appellants contend that this was error because their theory of recovery was actually premised on an incorporation of article I, section 10, by the fifth amendment, which does apply to the federal government.
 
 
 66
 It is easy to understand why the district judge failed to discuss this theory in his memorandum decision accompanying the order of dismissal, for appellants' pleadings do not give any clue that this is the theory on which they rely.
 
 
 67
 Even assuming that theory of recovery was properly pleaded, however, we reject that theory as without merit. The federal government took no action that "impaired" the contract between appellants and the City in a constitutional sense. As the district court noted, the City may well have breached its contract with the appellants. Moreover, we take as true the statements in appellants' pleadings alleging that the federal government was a silent partner in that agreement and aided in the breach. Nevertheless, an individual breach of contract such as the present one does not reach constitutional dimensions and create a cause of action based on the contracts clause. As the Supreme Court stated in United States Trust Co. v. New Jersey, 431 U.S. 1, 21, 97 S.Ct. 1505, 1517, 52 L.Ed.2d 92 (1977):
 
 
 68
 Although the Contract Clause appears literally to proscribe "any" impairment, this Court observed in Blaisdell that "the prohibition is not an absolute one and is not to be read with literal exactness like a mathematical formula."
 
 
 69
 In the United States Trust Co. case, the Supreme Court found an unconstitutional impairment of contract by the states of New Jersey and New York. The two states had passed similar statutes that repealed prior contractual obligations undertaken by the states. In the present case, in contrast, no attempt was made to use the law, federal or state, to repudiate a contractual obligation. Assuming the obligation did exist, all defendants were open to a suit for breach of contract. In short, appellants have confused impairment of performance of a contract with impairment of the obligation of the contract. The Constitution does not provide a federal action for simple breach of contract.
 
 
 70
 2. Against the States and the City.
 
 
 71
 Appellants rely directly on article I, section 10, in their cause of action against the states and the City for impairment of contract. We find no greater merit to appellants' claim against the states and City than we did with respect to their claim against the United States. No state or local law or action impaired the "obligation" of their contract. Based on our discussion in part II(B)(1), we dismiss the cause of action against the states and the City as well.
 
 
 72
 III. Conclusion.
 
 
 73
 In sum, the district court properly dismissed both causes of action against all of the defendants. Accordingly, we affirm.
 
 
 
 *
 TALBOT SMITH, Senior District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 The Honorable H. Kenneth Wangelin, United States District Judge for the Eastern District of Missouri. Judge Wangelin has filed two memorandum opinions in connection with this case. The first, dated March 11, 1977, is published at 428 F.Supp. 555 (E.D.Mo.1977). The second, dated August 4, 1977, is unpublished
 
 
 [2]
 The City of East St. Louis, Illinois, owns the bridge
 
 
 [3]
 Federal jurisdiction was asserted pursuant to 28 U.S.C. §§ 1331, 1358, 1361 (1970). Venue was alleged under 28 U.S.C. §§ 1391(b), 1403 (1970)
 
 
 [4]
 The appellants also sued William T. Coleman, Secretary of Transportation of the United States at the time the lawsuit was filed. Because any recovery against him would come out of the United States Treasury, we conclude that the cause against him is identical to the cause against the United States. We also note that appellants have not made any distinction between their theory of recovery against former Secretary Coleman and their theory of recovery against the United States
 
 
 [5]
 The quoted material is from the court's memorandum decision issued on March 11, 1977, dismissing a prior complaint. In its decision on August 4, 1977, dismissing the present complaint, however, the court readopted its prior holding as applicable to the United States defendants
 
 
 [6]
 The plaintiff class unquestionably includes nonresidents of Illinois and Missouri, satisfying the "Citizens of another State" requirement of the eleventh amendment
 
 
 [7]
 The state officials and agencies named as defendants include Daniel Walker, former Governor of Illinois; Langhorne Bond, Secretary of the Department of Transportation of Illinois; the Department of Transportation of the State of Illinois; the Illinois State Toll Highway Authority; Joseph Teasdale, Governor of Missouri; Jack Curtis, Chairman of the State Highway Commission of Missouri; and the State Highway Commission of Missouri
 
 
 [8]
 Appellants also note that in State ex rel. State Highway Commission of Missouri v. Bates, 296 S.W. 418, 420 (Mo.1927), the Missouri Supreme Court held that the Missouri Highway Commission "is in no sense entitled to immunity from suit, as is the state." Bates, however, was a contract action against the state by state residents. It involved not the eleventh amendment but rather an interpretation of Missouri state law on the right of a Missouri citizen to sue the agency. Subsequent to the Bates case, the Missouri courts have consistently held that the State Highway Commission of Missouri is an agent of the state and therefore not subject to tort liability without its consent. See, e. g., Luttrell v. State Highway Commission of Missouri, 379 S.W.2d 137 (Mo.App.1964); Broyles v. State Highway Commission of Missouri, 48 S.W.2d 78 (Mo.App.1932). We construe Bates to mean that the State Highway Commission of Missouri is liable to suit in state court on a contract to which it is a state party. Neither of these requirements is met in this case
 
 
 [9]
 We also reject appellants' contention that this question goes to merits, rather than to jurisdiction, and thus is an issue of fact rather than law. While it may be true that in some contexts a "fact" question arises, it is clear to us that all of the relevant facts were before the district court and that nothing further could have been gained by allowing this issue to progress to trial. The court properly decided the issue on the pleadings
 
 
 [10]
 The General Bridge Authority Act, 33 U.S.C. § 525 Et seq. (1970); the Rivers and Harbors Act, 33 U.S.C. § 401 Et seq. (1970); and the Federal-Aid Highways Act, 23 U.S.C. § 101 (1970)
 
 
 [11]
 Appellants speculate that an interstate agreement exists between Missouri and Illinois concerning the Poplar Street Bridge and that it will be found at a later time via discovery. They contend that only after this agreement is found can it be determined whether or not waiver of eleventh amendment immunity occurred. While we entertain considerable doubt about the existence of such a compact, we note that the federal law cited by appellants contains no waiver requirement. Thus, this case is unlike Petty v. Tennessee-Missouri Bridge Commission, 359 U.S. 275, 79 S.Ct. 785, 3 L.Ed.2d 804 (1959)
 We also reject appellants' argument that if such an agreement were found the states would be "estopped" from asserting their eleventh amendment immunity. According to appellants, the agreement is an interstate compact requiring congressional ratification under article I, section 10, of the United States Constitution:
 No State shall, without the Consent of Congress, * * * enter into any Agreement or Compact with another State * * *.
 Because the "compact" has not been expressly ratified by Congress, appellants claim that the states are "estopped" from their eleventh amendment immunity. Again, we doubt the existence of this compact. Assuming it does exist, however, we still do not believe that the states would be stopped from asserting their eleventh amendment immunity.
 
 
 [12]
 Appellants may have a breach of contract action against the City because of the provisions in the trust agreement with the City wherein the City promised not to permit the construction of a rival bridge within the City. In their brief, however, appellants expressly deny that they made any attempt to plead a breach of contract claim