Charles CHAFFER, Plaintiff,

v.

BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF LONG BEACH, Defendant.

No. CIV.A.00–3841.

United States District Court, E.D. New York.

Nov. 1, 2002.

William D. Friedman, Hempstead, NY, for Plaintiff.

Christopher Venator, School District of the City of Long Beach, Ingerman, Smith, Greenberg, Gross, Richmond, Heidelberger, Reich & Scricca, Northport, NY, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.[1]

## I. INTRODUCTION

On June 8, 1999, the defendant Board of Education ("Board") of the Long Beach City School District ("District") voted to terminate plaintiff Charles Chaffer ("Chaffer"), a groundskeeper in the District since 1989. The Board's decision to terminate Chaffer was made shortly after an administrative hearing, conducted pursuant to New York Civil Service Law Section 75, at which an independent hearing officer reviewed the District's charges of incompetency and misconduct against Chaffer, heard from both sides, and ultimately recommended dismissal. Chaffer did not challenge this determination in state court through a proceeding pursuant to Article 78 of the New York Civil Practice Law. Instead, he brought a Section 1983 action challenging his termination in this Court, alleging that the Board, acting under color of state law, denied him his constitutional rights to due process and equal protection of the laws, and violated the contracts clause of the United States Constitution.

Both sides have moved for summary judgment under Federal Rule of Civil Procedure 56. At a hearing on May 9, 2002, the parties agreed that the Court should decide the case on the record submitted on the summary judgment motions, without a formal trial. Having reviewed the record and considered the issues presented, the Court now issues its findings of facts and conclusions of law, pursuant to Federal Rule of Civil Procedure 52(a).

## II. FACTS

The facts underlying this case are essentially undisputed by the parties. Chaffer was hired by the District as a groundskeeper on or about January 25, 1989. Am. Compl. ¶ 11. This position is classified as non-competitive under the Civil Service Law of the State of New York. *Id.* at ¶ 12. Accordingly, once Chaffer had remained at the job for more than five years, he was entitled to the protections provided by Section 75 of the Civil Service Law, and could not be terminated "except for incompetency or misconduct shown after a hearing upon stated charges." N.Y. Civil Service Law § 75(1), Am. Compl. ¶¶ 13–14.

During the eighteen month period between June 1, 1997 and November 30, 1998, Chaffer missed 87.5 days of work. Plaintiff's Memorandum of Law ("Pl.'s Mem."), 1 [Docket No. 22]; Defendant's Memorandum of Law ("Def.Mem."), 1 [Docket No. 19]. With the exception of one half day, all of these absences were paid by the District as sick leave or other authorized leave under the collective bargaining agreement covering Chaffer's employment. Pl.'s Mem. at 1; Plaintiff's Motion for Summary Judgment and Affirmation in Support ("Pl.'s Mot.") [Docket No. 15 & 16], Ex. 3—Defendant's Post–Hearing Memorandum, at 3. Throughout this time, Chaffer's supervisors communicated with him orally and in writing about his poor attendance and warned him that he needed to improve. *Id.* at 4.

On December 15, 1998, the District's Superintendent, Dr. Elliott Landon, served charges of incompetency and misconduct (relating solely to Chaffer's record of absences) against Chaffer, pursuant to Section 75. Defendant's Motion for Summary Judgment and Counsel's Declaration in Support, ("Def.'s Mot."), [Docket No. 17 & 18], Ex. A—Statement of Charges at 1–2. The statement of charges informed Chaffer that a hearing had been scheduled for January 13, 1999 before Hearing Officer Terence Smolev, and that Chaffer had eight days to respond to the charges in

1. Of the District of Massachusetts, sitting by designation.

writing. *Id.* at 2. On January 13, 1999, the District appeared through its counsel. *Id.*, Ex. C—Report of Hearing Officer, at 2. Chaffer and his counsel also appeared, but left the hearing shortly thereafter, despite being warned by the Hearing Officer that the proceeding would continue. *Id.* On that date, the District called Assistant Superintendent Randie Berger as a witness to testify regarding Chaffer's absences and the District's records of those absences. *Id.* Berger testified that Chaffer's absences had imposed a burden on the District because he was the only employee with a special license to use heavy equipment, and that Chaffer had the worst attendance record of the District's 700 employees. Pl.'s Mot., Ex. 4—Defendant's Post–Hearing Memorandum at 3–4.

On March 31, 1999, the hearing was reconvened at the request of Chaffer's counsel. Def.'s Mot., Ex. C at 2. At that hearing, Chaffer's counsel sought additional time to prepare his defense. *Id.* His request was granted, and the hearing was adjourned until April 19, 1999. *Id.* Chaffer was also given the opportunity to file an answer to the District's charges against him, *id.;* he did so on April 6, 1999. *See* Pl.'s Mot., Ex. 1—Chaffer's Answer to Charges. In his answer, Chaffer argued that he could not be terminated for his absences, since all of them had been taken as paid absences as entitlements under the collective bargaining agreement governing his employment. *Id.* at 1.

The third and final day of the hearing was on April 19, 1999, at which time Chaffer's counsel cross-examined Berger, and then rested. Def.'s Mot., Ex. C, at 2. Both sides subsequently submitted post-hearing memoranda to the Hearing Officer in mid-May. *See* Pl.'s Mot. Ex. 3 & 4.

On May 27, 1999, the Hearing Officer issued his report. Def.'s Mot., Ex. C. In this report, he stated that Chaffer had taken excessive absences that he knew or should have known would have an adverse effect on the District. *Id.* at 3. He further found that, notwithstanding the fact that Chaffer's absences had been paid, the number of his absences had been excessive and that "any penalty short of dismissal...would not be sufficient in this matter"; he then recommended that Chaffer be dismissed from employment with the District *Id.* at 3–4. The Board subsequently voted to dismiss Chaffer on June 8, 1999, without giving Chaffer an opportunity to respond to the Hearing Officer's recommendation. Am. Compl. ¶¶ 21–22. Chaffer's counsel informed him of the termination several days later; Chaffer himself was never given written notice by the District. Affidavit of William Friedman ("Friedman Affidavit") [Docket No. 23], ¶ 8.

## III. DISCUSSION

Chaffer's cause of action under 42 U.S.C. § 1983 alleges that the Board, acting under color of state law, deprived him of his constitutionally protected rights to due process and equal protection, and violated the contracts clause of the United States Constitution. As will be discussed below, each of these claims is without merit.

### A. Due Process

Chaffer charges that the Board's termination of him violated both his procedural and substantive due process rights under the United States Constitution. Am. Compl. ¶ 27; Pl.'s Mem. at 4–7. Chaffer's procedural due process claim relates solely to his lack of opportunity to respond to the Hearing Officer's recommendation of termination. Pl.'s Mem. at 4–5. He does not allege that any procedural due process violations took place at the Section 75 hearing itself. *Id.* at 4. Rather, he argues that in

failing to provide him with a chance to respond to the Hearing Officer's recommendation before terminating him, the Board deprived him of procedural due process. *Id.* at 5.

■ To the extent that Chaffer is arguing that the Board failed to follow appropriate Section 75 procedures in terminating him, his claim necessarily fails because of the availability of Article 78 review. That is, even assuming *arguendo* that Section 75 did require the Board to give Chaffer an opportunity to respond to the hearing officer's recommendation before terminating him, which the Board failed to do, Chaffer's Section 1983 claim cannot stand. As the Second Circuit explained in *Hellenic American Neighborhood Action Committee v. City of New York,* when procedural due process is denied because of a random, unauthorized act by a state employee, no constitutional violation occurs as long as the state provides an adequate postdeprivation remedy. 101 F.3d 877, 880 (2d Cir.1996) (*citing Hudson v. Palmer,* 468 U.S. 517, 531, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984)). An Article 78 proceeding is clearly recognized as such a remedy. *Id.* at 881. Thus, because Chaffer could have brought an Article 78 proceeding challenging the Board's termination of him, *see, e.g., Garayua v. Board of Education of the Yonkers City School District,* 248 A.D.2d 714, 671 N.Y.S.2d 278 (2d Dep't 1998), he cannot allege a constitutional violation on the ground that the Board deviated from the standard Section 75 procedures in terminating him. *See, e.g., Rafiy v. Nassau County Medical Center,* 218 F.Supp.2d 295, 304 (E.D.N.Y. 2002).

Chaffer also alleges, however, that to the extent that the procedures used to terminate him were in full compliance with Section 75, Section 75 is itself unconstitutional because it fails to provide employees with sufficient procedural due process. Am. Compl. ¶ 26. This is not a claim based on a random, unauthorized act by a state employee. Rather, it is a challenge to an established state procedure—Section 75. As the Second Circuit stated in *Hellenic,* 101 F.3d at 880, "[w]hen the deprivation occurs in the more structured environment of established state procedures, rather than random acts, the availability of postdeprivation procedures will not, ipso facto, satisfy due process." Accordingly, the fact that Chaffer could have brought an Article 78 proceeding does not dispose of this argument, and the Court must consider it.

Under *Cleveland Board of Education v. Loudermill,* 470 U.S. 532, 545–46, 105 S.Ct. 1487, 84 L.Ed.2d 494 (1985), procedural due process requires that an employee with a constitutionally protected property interest in his employment, such as Chaffer, be provided with "some kind of hearing" before being terminated. The employee is "entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story." *Id.* at 546, 105 S.Ct. 1487. No more than this is necessary when provisions for full post-termination hearings exist. *Id.*

■ The pre-termination hearing procedure outlined in Section 75, particularly when taken in combination with the availability of post-termination review through Article 78, clearly meets the *Loudermill* standard. Under Section 75, before being terminated, civil service employees such as Chaffer are entitled to, among other things, a written copy of the charges against them, an opportunity to respond in writing, an opportunity to attend the pre-termination hearing with counsel (or union representative), and the opportunity to call witnesses at the hearing. Accordingly, in

*Anderson v. Dolce,* 653 F.Supp. 1556, 1566 (S.D.N.Y.1987), the court concluded that "[s]upplemented with Article 78 review, Section 75 satisfies the *Loudermill* requirements of due process in employment deprivation cases." This Court agrees, and thus rejects Chaffer's procedural due process claim.

 Chaffer also argues that the Board violated his substantive due process rights in terminating him for excessive absences when all of his absences were taken as paid entitlements under his employment contract. Pl.'s Mem. at 5–7. This argument is clearly without merit. As the Second Circuit held in *McClary v. O'Hare,* 786 F.2d 83, 89 (2nd Cir.1986), the substantive due process prong of the due process clause protects citizens only from abuses of governmental authority, and "does not provide a remedy to a public employee that would not be available to a private employee subject to identical conduct by his employer." Although a substantive due process claim may be available against a government employer who is intentionally abusing persons under his control, *see Dillon v. Boyce,* 1995 WL 116476, *5 (E.D.N.Y.1995), *McClary* 786 F.2d at 88, a mere "contract dispute...does not give rise to a cause of action under Section 1983." *Costello,* 811 F.2d at 784. Accordingly, Chaffer's argument that he was denied due process is entirely without merit.

### B. Equal Protection

 Chaffer next charges that the Board's termination of him deprived him of equal protection of the laws. Am. Compl. ¶ 41, Pl. Mem. at 7–8. He alleges that the "policy that the [Board] applied to [him] in finding that he had taken 'excessive absences' was individually, separately and inequitably applied to him." Am. Compl. ¶ 39. In support of this contention, Chaffer offers the affidavit of his counsel, who has been the attorney for the labor union representing the plaintiff for over twenty years. Friedman Affidavit, ¶ 3. Chaffer's counsel states that no permanent employee of Chaffer's union has ever been sanctioned on charges of "excessive absenteeism," and that Chaffer's termination was a "one of a kind exclusive action" by the Board. *Id.* Chaffer also points to Berger's testimony (at the Section 75 hearing) that there is no official District policy regarding excessive absences,[2] and that prior to Chaffer's case, she had never been a party to a disciplinary proceeding regarding an employee's excessive absences. Pl.'s Mot. Ex. 5, pp. 114–15.

Nowhere does Chaffer contend that he was treated differently on the basis of his race, gender, or membership in any other protected class, such that the Board's termination of him should be subject to strict scrutiny. Rather, Chaffer seems to be suggesting that the Board selectively applied an "excessive absenteeism" policy against him in a way that resulted in his termination, and thereby violated his rights to equal protection under the law— in short, a claim of selective enforcement.

To make out such a selective enforcement argument, Chaffer must show that:

(1) a group of similarly-situated individuals exists; (2)[he] was treated differently from that group; (3) the decision-maker intentionally treated him differently; and (4) the motivation for the disparate treatment was (a) based on impermissible reasons such as race; (b) based on ill will or personal animosity;

---

2. Berger testified that the District's general practice is "that we warn people and those people that are absent for a long period of time, we do some—at times we do terminate them." Pl.'s Mot., Ex. 5, p. 114.

or (c) made for wholly arbitrary reasons lacking any rational basis.

*Payne v. Huntington Union Free School District,* 219 F.Supp.2d 273, 278 (E.D.N.Y. 2002).

Chaffer fails to meet these criteria. In his deposition, he testified to his belief that he was treated differently than the other members of the grounds crew, and speculated that "maybe someone on the school board didn't like [him]." Def.'s Mot., Ex. E -- Chaffer Deposition, October 16, 2001, p. 23. Chaffer refused, however, to identify any people who were treated differently from him with respect to a comparable record of absences. Indeed, he failed to offer any basis whatsoever for his suspicion that he was treated particularly harshly, other than referring to "a gut feeling." Id. Given this lack of evidence, particularly in juxtaposition with Berger's testimony that Chaffer had the worst attendance record of all 700 employees in the District, the Board's decision to terminate Chaffer in response to his absences cannot be considered a case of selective enforcement.

### C. Contracts Clause

 Finally, Chaffer argues that the Board, acting under color of state law, violated the contracts clause of the United States Constitution in terminating him for taking absences that were authorized under his employment contract. Am. Comp. ¶ 41, Pl. Mem. at 8–10. The contracts clause provides that "No State shall...pass any...Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. As the Second Circuit stated in *TM Park Avenue Associates v. Pataki,* "[a]n individual breach of contract...does not reach constitutional dimensions and create a cause of action based on the contracts clause." 214 F.3d 344, 348 (2d. Cir.2000) (*citing Jackson Sawmill Co. v. United*

*States,* 580 F.2d 302, 311–12 (8th Cir. 1978)). Rather, a federal cause of action based on the contracts clause can only be brought "when one alleges that he or she has a contract with the state, which the state, *through its legislative authority,* has attempted to impair." *E & E Hauling, Inc. v. Forest Preserve District of Du Page County,* 613 F.2d 675, 678 (7th Cir.1980) (emphasis added). Chaffer's allegation does not satisfy this criterion, as he has not alleged that any state legislative action interfered with his employment contract. Accordingly, the contracts clause is inapplicable here.

### IV. CONCLUSION

Chaffer's procedural due process, substantive due process, equal protection, and contracts clause claims are all without merit. Accordingly, pursuant to rule 58, the Court enters judgment in favor of the defendant Board of Education of the Long Beach City School District.

SO ORDERED.