694 F.2d 968
 CENTRAL TRANSPORT, INCORPORATED, Petitioner,
v.
The UNITED STATES of America,
and
Interstate Commerce Commission, Respondents.
Kenan Transport Co., Intervenor/R.
Port Norris Express Co., Inc., Intervenor/P.
 No. 82-1504.
 United States Court of Appeals,
Fourth Circuit.
 Argued Oct. 7, 1982.
Decided Dec. 10, 1982.
 
 Lester R. Gutman, Washington, D.C. (E. Stephen Heisley, P.C., Eugene B. Granof, Norman T. Fowlkes, III, Vedder, Price, Kaufman, Kammholz & Day, Washington, D.C., on brief), for petitioner.
 Dennis J. Starks, I.C.C., Washington, D.C. (William F. Baxter, Asst. Atty. Gen., John J. Powers, III, Margaret G. Halpern, Dept. of Justice, John Broadley, Gen. Counsel, Lawrence H. Richmond, Deputy Associate Gen. Counsel, I.C.C., Washington, D.C., on brief), for respondents.
 George W. Selby, Washington, D.C. (Francis W. McInerny, Harry J. Jordan, Washington, D.C., Donald P. Irwin, John C. Thomas, Washington, D.C., MacDonald, McInerny, Guandolo & Jordan, Hunton & Williams, Washington, D.C., on brief), for intervenor.
 Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.
 HARRISON L. WINTER, Chief Judge:
 
 
 1
 Central Transport, Inc. (Central) seeks review of an order of the Interstate Commerce Commission (ICC) granting Kenan Transport, Inc. (Kenan) a certificate of public convenience and necessity authorizing Kenan to transport commodities in bulk, over irregular routes, between all points in the continental United States. Central contends that the ICC erred in granting this authority because Kenan failed to demonstrate that the proposed service would serve a useful public purpose, responsive to a public demand or need, as required by 49 U.S.C. Sec. 10922(b)(1)(B). Additionally, Central contends that the ICC failed to articulate in sufficient detail its factual findings and erred in denying Central's request for an oral hearing. While we think that the ICC should be required to make more specific findings in future cases, we affirm its order.
 
 I.
 
 2
 Kenan submitted its application to the ICC on November 9, 1981, requesting authority as a common carrier to transport commodities in bulk, over irregular routes, between all points in the United States. Kenan's application was accompanied by the verified statement of W. David Fesperman, Kenan's traffic manager. That statement indicated that Kenan already held authority for transporting numerous products, with particular concentration in the Southeast. The purpose of the application was stated as being to permit Kenan to provide a more complete, uniform and flexible service to the shipping public, as well as to improve return haul operations, reducing empty miles and annually saving a large quantity of fuel.
 
 
 3
 As additional support for its application, Kenan submitted twenty-seven verified certifications of shipper support, each by a shipper who currently utilized Kenan's services. These certifications, on forms designed by the ICC, indicated the identity of the shipping company's witness, the type and volume of commodities that would be tendered to Kenan if the application were granted, the geographical movement of the traffic involved, with origin and destination points listed separately, and any dissatisfaction with currently available carrier service.
 
 
 4
 Protests were filed with the ICC by seven carrier companies, including Central. Central's protest consisted primarily of a verified statement in opposition by Ben H. Keller, III, traffic manager of Central. The protest noted that Central held the precise authority for which Kenan was applying, and described the adverse impact on Central were the authority to be granted. The principal thrust of Central's protest, however, was that Kenan had failed to meet its burden of showing that the proposed service would serve a useful public purpose, responsive to a public demand or need. In particular, Central proceeded shipper by shipper to allege defects in each witness's statement, then claiming that the remaining support was insufficient to demonstrate a nationwide shipper need. Central, however, submitted no affirmative evidence tending to show an absence of a public demand or need for the proposed service. At the same time, Central filed a request for an oral hearing, indicating that it wished to cross-examine Mr. Fesperman and the shipper witnesses, in order to clarify the alleged defects in their statements.
 
 
 5
 Finally, Kenan filed a reply to the statements in opposition, which contained a second affidavit by Mr. Fesperman, in which he rebutted the allegations made by Mr. Keller and proceeded seriatim through the shipper testimony, disputing the alleged defects raised by Central's protest.
 
 
 6
 The Commission's decision, by its Review Board Number 2, was entered on February 24, 1982. The decision summarily denied Central's request for an oral hearing. It then summarized Kenan's present authority and service, and recited Kenan's contentions that a grant of the authority would reduce empty mileage, save fuel, and provide a more complete, uniform and flexible service to the shipping public. The decision indicated that twenty-seven shippers had submitted certifications of support, and that many of the shippers operated nationwide. Next, the decision discussed the fears of the protestants that traffic would be diverted from them to Kenan. The decision then stated:
 
 
 7
 We believe that applicant's evidence is sufficient, under current decisional standards, to show that the service authorized in appendix will respond to a public demand or need. Applicant has established a logical relationship between the authority sought and the case presented. Applicant is not a new or unknown competitive factor in the field of bulk transportation. It now holds substantial authority to perform the service proposed, and by this application seeks to round-out and extend its authority. The supporting shippers have shown a need for applicant's expanded services. (Citation omitted)
 
 
 8
 Finally, after concluding that the benefits to the public would outweigh any potential harm to competing carriers, the decision stated in relevant part:
 
 
 9
 We find: Performance by applicant of the service described in the appendix will serve a useful public purpose, responsive to a public demand or need.... An appropriate certificate should be granted.
 
 
 10
 This decision was summarily affirmed by the Commission, Division 2, acting as an Appellate Division, on May 10, 1982. On June 10, 1982, a judge of this court granted Central's motion for a stay of the Commission's order pending judicial review, and this expedited appeal followed.
 
 II.
 
 11
 With its adoption of the Motor Carrier Act of 1980, Pub.L.No. 96-296, 94 Stat. 793, Congress relaxed the burden on carriers seeking operating certificates from the ICC. See H.R.Rep.No. 96-1069, 96th Cong., 2d Sess. 3, reprinted in 1980 U.S.Code Cong. & Ad.News 2285. Whereas prior to adoption of the Act, an applicant had to demonstrate that the proposed service "be required by the present or future public convenience and necessity," 49 U.S.C. Sec. 10922(a) (Supp. II 1978), the new Act requires that the applicant merely come forward with evidence demonstrating that the service proposed will serve a useful public purpose, responsive to a public demand or need, and that the applicant is fit, willing, and able to provide the transportation and comply with the applicable laws and regulations. 49 U.S.C. Sec. 10922(b)(1). In addition, the 1980 Act added as an aspect of national transportation policy the promotion of competitive and efficient transportation services. Id. Sec. 10101(a)(7). Unquestionably, the Congressional intent underlying the 1980 Act was to reduce unnecessary regulation and ease competitive carrier entry into the trucking industry. See Port Norris Express Co. v. ICC, 687 F.2d 803, 806 (3 Cir.1982).
 
 
 12
 However, as has been noted by other circuits, the 1980 Act did not remove the Commission's duty under the Administrative Procedure Act to decide a proceeding articulating "findings and conclusions, and the reasons or basis therefor, on all the material issues of fact, law, or discretion presented on the record." 5 U.S.C. Sec. 557(c)(3)(A). See Containerfreight Corp. v. United States, 685 F.2d 329, 331 (9 Cir.1982). Nor did the Act remove our duty to ensure that each such finding and conclusion is supported by substantial evidence on the record, including, of course, the finding that the applicant's proposed service will serve a useful public purpose, responsive to a public demand or need. 5 U.S.C. Sec. 706(2)(E). See Port Norris Express Co. v. ICC, supra, 687 F.2d at 807 & n. 4.
 
 III.
 
 13
 Unfortunately, we are once again faced with a decision of the Commission that is "perilously close to being unreviewable." Star Delivery & Transfer v. United States, 659 F.2d 81, 83 (7 Cir.1981). The cases are legion in which the Commission has been criticized for making perfunctory, conclusory findings couched in the statutory language and for omitting its reasoning and findings on all but those ultimate facts. See, e.g., id. at 83-84; Argo-Collier Truck Lines Corp. v. United States, 611 F.2d 149 (6 Cir.1979); Campbell Sixty-Six Express, Inc. v. ICC, 603 F.2d 1012 (D.C.Cir.1979) (per curiam); Humboldt Express, Inc. v. ICC, 567 F.2d 1134 (D.C.Cir.1977) (per curiam); Trans-American Van Service, Inc. v. United States, 421 F.Supp. 308 (N.D.Tex.1976) (three-judge court). These cases have repeatedly stressed the need for the Commission to make adequate "subordinate" findings, upon which the Commission's ultimate conclusions are based. See, e.g., Trans-American Van Service, supra, 421 F.Supp. at 318 (collecting cases). Without such findings, a reviewing court cannot assure that the Commission's ultimate result was the product of reasoned decision, rather than of arbitrary or capricious action. Moreover, the absence of subordinate findings places an undue burden on the courts of appeals to perform an insufficiently directed review of the record, trying to find the evidence upon which the Commission proceeded from step to step. For this reason, we emphasize here our agreement with our sister circuits, as cited above, that the Commission must make adequate findings on all the material issues--both subordinate and ultimate--of fact, law, and discretion.
 
 
 14
 Moreover, we believe that this duty continues to exist under the 1980 Motor Carrier Act. See Containerfreight Corp., supra; Port Norris Express Co., supra. The need to make these subordinate findings is the correlative to our duty to review the Commission's decisions against the "arbitrary [or] capricious" and "substantial evidence" tests, which remain unchanged by the 1980 Act. However, we recognize that the Act was intended to streamline the application process and to reduce the administrative burden and delay. Thus, we will affirm the Commission's decision even if not "crystalline," provided that the Commission makes subordinate and ultimate findings adequate to permit the protestants to focus any appeal, and to permit the reviewing court to ensure that a proper result was reached without having to make an unguided search of the administrative record.
 
 
 15
 The Commission's decision in the present case makes the ultimate finding that Kenan showed that its proposed service would serve a useful public purpose, responsive to a public demand or need. As subordinate findings, the Commission stated that the supporting shippers had shown a need for Kenan's expanded service. The Commission noted that many of these twenty-seven shippers were large companies with national operations, requiring nationwide distribution for their commodities. Finally, the Commission noted Kenan's contentions that it could reduce empty mileage and save fuel if the application was adopted.
 
 
 16
 We strongly disapprove of the form of the Commission's decision on this issue. First, the subordinate finding as to the shippers' need for expanded service provides no specific findings as to which shippers were found by the Commission to have need for service in which states, despite the fact that the protestants directed numerous attacks upon alleged evidentiary flaws in the shippers' statements and upon the resultant adequacy of that support. The Commission failed to address or even note these allegations, cf. Pitre Bros. Transfer, Inc. v. United States, 580 F.2d 140 (5 Cir.1978), and failed to specify its findings within the shipper testimony. Therefore, it fell upon us to perform an unguided review of the entire shipper testimony, in search of evidence to support the Commission's broad findings. We disapprove of the Commission's brevity and lack of guidance to the reviewing court.
 
 
 17
 Second, we disapprove of the Commission's presentation of the majority of the factual issues in unresolved advocacy form, listing the factual contentions of the opposing parties without indicating how they were resolved. Here the Commission noted Kenan's contentions regarding reduced empty mileage and saved fuel, but made no independent findings as to whether granting the service would indeed lead to such savings. Again, this ambiguity and lack of specific factual findings put an undue burden on us to make an unguided review of the entire record in search of evidence to support or refute these factual contentions, upon which the Commission may have based its decision.
 
 
 18
 These inadequacies in the depth and specificity of the Commission's decision are actually counterproductive to the Congressional goal of expedition of carrier licensing, because they prolong the stage of judicial review by forcing the court to perform a time-consuming, unguided review of the administrative record. Additionally, in cases of this type, it is usual for the protestants to seek to enjoin an order of the ICC pending full appellate review. On such an application, the judge or panel of judges to which it is referred rarely have access to the full record and specific findings by a neutral fact finder are very necessary to a reasoned decision to grant or withhold interim relief. For those reasons, the Commission must in all future cases make full and specific subordinate and ultimate findings on all the material issues.
 
 
 19
 Because the present case is the first full review we have made of a Commission order under the new Act, we made a full and independent review of the record in this case despite the inadequacies in the Commission's decision. We emphasize that this unguided review was performed only because the case arose in that posture; we will not accept such conclusory findings in future decisions. However, having performed that review in this case, we turn now to the question of whether the evidence of record supported the Commission's conclusion.
 
 
 20
 Our review of the shipper certifications convinces us that there is substantial evidence to support the Commission's ultimate findings, as well as its over-brief subordinate conclusions. Numerous large shippers indicated that they would, if the application was granted, tender a greatly increased volume of business to Kenan. Moreover, many of the origins and destinations cited by these shippers are throughout the country, at points sufficiently numerous and widespread to persuade us that nationwide authority may properly be granted. The companies include large oil companies, such as Ashland, Exxon, Mobil, and USA, as well as other large shippers, such as DuPont, Pfizer, and PPG Industries. In addition, many of the shippers indicated that the presently available carrier service was inadequate to meet their needs.
 
 
 21
 Our independent review also convinces us that the alleged evidentiary flaws are not substantial enough to negate in any way the substantiality of the affirmative shipper support for the application. Central principally complains that, because most of the shippers did not coordinate origin and destination points, it is impossible to determine which cities are to be connected and over which routes the inadequacies in the currently available service lie. We believe, however, that because so many of the origin and destination points lie outside of Kenan's present range of authority, and instead are spread across the country, this "defect" does not undermine the substantiality of the evidence of nationwide need. We are similarly convinced that the other flaws alleged by Central do not compromise the adequacy of the evidence showing that the proposed service would serve a useful public purpose, responsive to a demonstrated demand and need.*
 
 IV.
 
 22
 We affirm the Commission's decision in the present case because of the strength of the applicant's evidence as determined by our independent review. At the risk of redundancy, we emphasize to the Commission, however, that its decision in this case gives insufficient attention to the subsidiary findings and undesirably little guidance to the reviewing court. We expect future decisions of the Commission to be in conformity with the standards that we have restated in this opinion.
 
 
 23
 AFFIRMED.
 
 
 
 *
 Likewise, we reject Central's contention that the Commission erred in refusing Central's request for an oral hearing. Under the Commission's regulations, 49 C.F.R. Sec. 1100.43, it may in its discretion order the use of "modified" procedures utilizing only written submissions if substantially all the material issues may thus be resolved. Here the Commission's decision indicated that because there were no material issues in dispute, no oral hearing would be granted. We believe that the Commission could properly have determined that the alleged evidentiary flaws were not sufficiently substantial to cast doubt upon the need of the shippers for Kenan's expanded service. See Steere Tank Lines, Inc. v. ICC, 687 F.2d 104, 107 (5 Cir.1982) (per curiam). In light of the intention of Congress in the 1980 Act to streamline the administrative procedures so as to reduce expense and delay, we hold that the Commission acted within its discretion in denying Central's request for an oral hearing