# WILLIAMS INTERNATIONAL CORP.

### v.

### The UNITED STATES.

### No. 416–84C.

United States Claims Court.

April 12, 1985.

Timothy Sullivan, Washington, D.C., for plaintiff; Thomas O. Miller and Dykema, Gossett, Spencer, Goodnow & Trigg, Washington, D.C., of counsel.

Claud A. Daigle, Jr., Washington, D.C. with whom was Acting Asst. Atty. Gen., Richard K. Willard, Washington, D.C., for defendant; Thomas J. Scott, Jr., Dept. of Justice and Kenneth Dobyns, Dept. of the Navy, Washington, D.C., of counsel.

## OPINION

LYDON, Judge:

Defendant has moved to dismiss plaintiff's complaint on the ground that this court lacks jurisdiction over the subject matter of this action. Plaintiff opposes this motion asserting that subject matter jurisdiction in this court on its action is to be found under the Contract Disputes Act of 1978, 41 U.S.C. § 609 (1982). Alternatively, plaintiff requests, if the court finds it lacks jurisdiction, that the court transfer this action to the United States District Court for the District of Columbia pursuant to 28 U.S.C. § 1631 (1982). For reasons which follow, it is concluded that this court lacks jurisdiction to consider this action. The court further concludes that this action should not be transferred as requested by plaintiff.

### I.

Plaintiff, a closely-held Michigan corporation, has engaged in designing, developing and manufacturing the F-107 gas turbine jet engine currently used in both the Air Force and Navy cruise missiles. Under a series of Defense Department contracts, covering the period from August 19, 1977 to the present, plaintiff has delivered to defendant, acting through the Joint Cruise Missiles Project (JCMP), technical data consisting of drawings depicting components of the cruise missile engine. Each of these contracts contained a clause entitled, "Rights In Technical Data and Computer Software" (ASPR 7-164.9(a) (Apr. 1977) and DAR 7-104.9(a) (Mar. 1979 and May

1981)). The contracts also provided for a determination of rights in technical data during the life of the contracts if, and when, deemed desirable or necessary by the parties. Until such time as a final determination was made, the contractor, under said contracts, reserved the right to place restrictive marks on technical drawings pertaining to certain components of the F–107 cruise missile engine.

Pursuant to the determination of rights in data clauses of its contracts with JCMP, plaintiff marked 38 drawings with limited rights legends. Plaintiff advised the JCMP contracting officer that the data contained in the 38 drawings was developed at plaintiff's private expense and constituted trade secrets of plaintiff. By letter dated March 30, 1979, defendant requested plaintiff to submit documentation supporting its position that it had developed the technical data at private expense. Plaintiff did so.

On August 15, 1983, the contracting officer issued a five-page decision in which he concluded, after reciting the history of the F–107 engine,[1] that plaintiff's development of the F–107 cruise missile engine "clearly illustrates a mix of private and Government funds in the design and development of the engine, whereby the Government is entitled to unlimited rights in technical data pertaining thereto." Accordingly, plaintiff was told that he was not entitled to restrictively mark, in accordance with the Rights in Technical Data clauses of the contracts, any of the technical data pertaining to the F–107 cruise missile engine, and that the government may cancel or ignore any marking not authorized by the terms of the contracts. Specifically, plaintiff was told, in the decision of August 15, 1983, "that the Government may thus cancel or ignore the restrictive markings on the 38

sheets of drawings." Plaintiff was advised, in this August 15, 1983, decision, that it was "the final decision of the Contracting Officer", and that plaintiff could appeal said decision to the Armed Services Board of Contract Appeals, or, in lieu of such an appeal, "bring an action directly in the U.S. Claims Court within 12 months of the date you receive this decision."[2]

Plaintiff filed its complaint in this court on August 13, 1984, seeking reversal of the contracting officer's final decision of August 15, 1983, that the government may cancel or ignore the restrictive markings on the 38 drawings submitted by plaintiff to JCMP pursuant to the contracts between them. Said complaint was amended on September 19, 1984. Plaintiff wants a judgment "finding" that the 38 drawings in question were developed at plaintiff's private expense and reversing the government's decision not to honor plaintiff's restrictive markings on said drawings. In its complaint, plaintiff does not allege that the 38 drawings in issue have been disclosed, or will be disclosed in the reasonable future outside the government, that JCMP has cancelled said restrictive markings, or that it has suffered, or is in danger of suffering any damage, monetary or otherwise. No specific demand for monetary relief is sought by plaintiff in its complaint. Plaintiff's complaint does seek "such other and further relief as the court deems just and proper."

## II.

■ It is clear from the complaint, as amended, and the submissions of the parties that plaintiff makes no claim for monetary relief. It is also clear that plaintiff is seeking an order from the court declaring

---

1. The genesis for the F–107 engine was the WR–19 engine which plaintiff introduced in 1965. The WR–19 engine was subject to subsequent development and improvement under different government contracts in various contexts. In his August 15, 1983, decision, the contracting officer stated: " * * * The original WR 19 engine was unsuitable for the use which the Government intended and consequently an investment of approximately $220 million for additional design and development effort spread

over a span of more than 15 years was necessary to achieve the F 107 engine design. * * *"

2. It is to be noted that administrative actions or regulations cannot create jurisdiction in this court. See Paul E. Lehman, Inc. v. United States, 230 Ct.Cl. 11, 17, 673 F.2d 352, 356 (1982). See also generally Coastal Corp. v. United States, 713 F.2d 728, 730 (Fed.Cir.1983).

that the government must honor plaintiff's restrictive markings on the 38 drawings in question. Defendant says plaintiff is seeking a declaratory judgment. Plaintiff prefers to look at the matter differently.[3] Plaintiff says it seeks only to have this court resolve its dispute with the contracting officer regarding the restrictive markings it placed on 38 drawings it supplied the government under certain contracts. The substance and essence of plaintiff's complaint, buttressed by its opposition brief, persuades the court that plaintiff does indeed seek relief by way of a declaratory judgment, *i.e.,* it seeks a declaration of its rights and legal relations with JCMP relative to certain contracts entered into by the parties. It does not seek any monetary or other relief. The relief plaintiff seeks is prophylactic in character. *See* 28 U.S.C. § 2201 (1982). *See also* 6A J. Moore, *Moore's Federal Practice* ¶ 57.05 (1984).

It is settled that prior to enactment of the Contract Disputes Act of 1978, 41 U.S.C. §§ 601–613 (1982) (CDA), the United States Court of Claims, this court's predecessor, lacked jurisdiction to grant the type of declaratory relief that plaintiff seeks in its complaint. Indeed, the jurisdiction of the Court of Claims was generally limited to actions for money judgments. *United States v. King,* 395 U.S. 1, 3–5, 89 S.Ct. 1501, 1502–03, 23 L.Ed.2d 52 (1969). Plaintiff does not take issue with this settled law. Instead, it suggests that Congress, in passing the CDA, intended to give the Court of Claims (and thereafter this court) an expanded jurisdiction that had been denied to it for nearly a century. *See United States v. King, supra,* 395 U.S. at 5, 89 S.Ct. at 1503.

Section 14(i) of the CDA amended section 1491 of title 28 by adding the following sentence at the end of the second paragraph thereof: "The Court of Claims [Claims Court] shall have jurisdiction to render judgment upon any claim by or against, or dispute with, a contractor arising under the Contract Disputes Act of 1978." 28 U.S.C. § 1491(a)(2) (Supp.1984). Plaintiff's argument is simple. It states that it has a dispute with the JCMP arising under the CDA and thus this court has jurisdiction to render judgment thereon. A literal reading of the amendatory language, *supra,* can be read to support such a view.

▮ A reading of the legislative history of the CDA, however, persuades the court that Congress did not intend to confer declaratory judgment authority on the Court of Claims or its successor court when it amended 28 U.S.C. § 1491 in 1978 by means of the CDA. This legislative history is significant and cannot be ignored as plaintiff suggests. Regarding the significance of legislative history impact *see generally Bindczyck v. Finucane,* 342 U.S. 76, 83, 72 S.Ct. 130, 134, 96 L.Ed. 100 (1951). During the course of legislative consideration of the CDA, it was proposed that the Court of Claims be given jurisdiction to grant, *inter alia,* declaratory relief relative to the rights of contractors with respect to, *inter alia,* data submitted pursuant to express or implied contract provisions restricting disclosure. *See* 124 Cong. Rec. 36263 (1978). *See also* S.Rep. No. 1118, 95th Cong. 2d Sess. 1, 34–35, *reprinted in* 1978 U.S.Cong. Code & Ad.News 5235, 5268–69. The suggested proposal would have added a section 1507 to Title 28 of the United States Code. However, the proposal designed to accomplish this objective was subsequently deleted from the legislation. *See* 124 Cong.Rec. 36265–36268 (1978). As a result, although considered during the legislative process, Congress re-

---

**3.** Plaintiff argues it does not seek declaratory relief but only seeks resolution of a contract dispute. In ruling on this dispute, however, this court cannot enter a money judgment but would only declare rights relative to the use of the restrictive markings on the 38 drawings in question. This, in substance, would be a declaratory judgment. Plaintiff concedes it has not yet been damaged and it concedes that as of now there is no threatened disclosure of the data on the 38 drawings in issue. It says, at best, the government may ultimately attempt to disclose the data. Moreover, any determination the court made would not result in a money judgment directly or indirectly. Any judgment entered by this court on the present complaint would not be money oriented.

fused specifically to grant the Court of Claims jurisdiction to provide declaratory judgment relief in an action against the government to restrain disclosure and declare the rights of contractors with respect to trade secrets and restrictive marked data submitted to the government. Given this legislative history, and in the absence of an express grant of declaratory judgment jurisdiction from Congress, this court declines to assume that the Court of Claims, and thus this court, has been given authority to issue declaratory judgments under the circumstances of this case. *See United States v. King, supra,* 395 U.S. at 5, 89 S.Ct. at 1503.[4] *See also* 6A J. Moore, *Moore's Federal Practice* ¶ 57.02[4] (1984) (*Applicable to What Courts*).

The above discussion serves to preclude any expansion of the court's jurisdiction by enlarging on the words "claim" or "dispute" in the last sentence of 28 U.S.C. § 1491(a)(2) (Supp.1984). Since the Congress did not expressly grant declaratory judgment authority to the Court of Claims, and thus to this court, the court cannot assume that it had been given such authority. *See United States v. King, supra.*[5]

■ The Claims Court, as was its predecessor—the Court of Claims, is a court of limited jurisdiction. Its jurisdic-

tion to grant relief depends on the extent to which the United States has waived its sovereign immunity to suit. It is well established that waiver of sovereign immunity cannot be implied but must be unequivocably expressed. *United States v. King, supra.* Accordingly, any jurisdiction granted to this court, by the CDA, must be strictly construed. *Cosmic Construction Co. v. United States,* 697 F.2d 1389, 1390 (Fed.Cir.1982). Reliance, as plaintiff does, on broad and general words such as "claim" or "dispute" in the CDA which might be construed as consent for jurisdictional purposes is misplaced for such consent will not be so construed when Congress has elsewhere, as it has in the legislative history of the CDA, specified how and to what extent jurisdiction was to be granted to the Court of Claims and subsequently to this court. As the Federal Circuit observed in pertinent part in *Fidelity Construction Co. v. United States,* 700 F.2d 1379, 1387 (Fed.Cir.1983), *cert. denied,* —— U.S. ——, 104 S.Ct. 97, 78 L.Ed.2d 103: "In construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress."

■ One final point deserves additional discussion. Historically, the jurisdic-

---

**4.** In the legislative considerations of whether or not the Court of Claims should be given declaratory judgment authority in the area of trade secrets and restrictive disclosure, Congress was well aware of the holding in *United States v. King,* 395 U.S. 1, 89 S.Ct. 1501, 23 L.Ed.2d 52 (1969). *See e.g.,* S.Rep. No. 1118, 95th Cong. 2d Sess. 1, 34–35, *reprinted* in 1978 U.S.Cong. Code & Ad.News 5235, 5268–69. It chose not to disturb that holding.

**5.** It is arguable, based solely on a literal reading of 28 U.S.C. § 1491(a)(2) (Supp.1984), that this court has "jurisdiction to render judgment upon any claim by or against, or dispute with a contractor" arising under the Contract Disputes Act of 1978 (CDA) including plaintiff's claim. However, this language in section 1491(a)(2) cannot be considered by itself. It is necessary to read section 1491(a)(2) in conjunction with section 1491(a)(3). In subpart (a)(3) Congress gave to this court limited declaratory judgment authority. Such injunctive authority is limited to claims brought before a contract is awarded.

Plaintiff, in this case, is seeking post-award declaratory relief under section 1491(a)(2). The granting of such relief would be violative of the plain language in section 1491(a)(3) limiting this court's declaratory judgment authority and thus, pursuant to proper statutory construction, *i.e.,* reading provisions in a consistent manner, the relief sought by plaintiff is precluded. *See* 2A Sutherland, *Sutherland Statutory Construction,* §§ 46.05 and 53.01 (4th ed. 1984).

Plaintiff also argued that the language of section 1491(a)(2) which gives this court "jurisdiction to render judgment upon any claim by or against, or dispute with a contractor arising under" the CDA is clear and thus resort to legislative history is unnecessary and improper. However, as the above discussion points out, the restrictive language concerning the declaratory judgment authority of this court in section 1491(a)(3) clouds the broad grant of authority to *render judgment* found in section 1491(a)(2). Such a blurring of the asserted clarity of subpart (a)(2) supports this court's reference to the legislative history of the CDA.

Numbers at top: **731**

tion of the Court of Claims has been confined to the rendition of money judgments in suits brought against the United States. *See United States v. King, supra,* 395 U.S. at 2–3, 89 S.Ct. at 1501–02. Absent express and direct language granting injunctive and declaratory judgment authority to this court as was done, for example, by Pub.L. No. 97–164, 28 U.S.C. § 1491(a)(3) (Supp.1984), the jurisdiction of this court is, what it had historically been in the Court of Claims, limited to asking for money judgments. While actions, claims and disputes may be pleaded and phrased in many ways, the *sine qua non* for jurisdictional purposes in this court is that such actions, claims and disputes be money oriented in some way. The court's jurisdiction is limited to actions asking for money judgments either directly or indirectly. *United States v. King, supra,* 395 U.S. at 2, 89 S.Ct. at 1501.

In this case, plaintiff does not seek a money judgment either directly or indirectly. Accordingly, the court is without jurisdiction over its action. Plaintiff relies on *Joseph Morton Co. v. United States,* 3 Cl.Ct. 120 (1983), *aff'd* 757 F.2d 1273 (Fed. Cir.1985), asserting that this court did not question the jurisdictional basis of the contractor's claim in that case even though, plaintiff alleges, the contractor's appeal did not assert any monetary damage claim but merely sought a determination converting a default termination into a termination for convenience. Plaintiff's reliance on this case is misplaced because the contractor's claim in *Morton* was money oriented since the claim for a termination for convenience, if granted, would have mandated a money payment to the contractor. See *e.g., Essex Electro Engineers, Inc. v. United States,* 702 F.2d 998, 999 (Fed.Cir.1983). In any event, in *Morton* there was a claim for monetary relief since the contractor there sought a termination for convenience "with a resulting price adjustment." *Id.* 3 Cl.Ct. at 123. In contrast, any court declaration in this case that defendant honor plaintiff's restrictive markings on 38 drawings would not result in a price adjustment or otherwise involve a money judgment either directly or indirectly. There is no way to read a money oriented claim in the complaint, or the brief, filed by plaintiff in this court.

### III.

Plaintiff requests that, if the court finds it lacks jurisdiction over its action, the court transfer the action to the United States District Court for the District of Columbia (District Court) pursuant to 28 U.S.C. § 1631 (1982). Defendant opposes this request.

There is no argument but that declaratory or injunctive relief may be available to plaintiff in the District Court relative to the action stated and the relief requested in its complaint filed in this court. *See Chrysler Corp. v. Brown,* 441 U.S. 281, 317, 319, 99 S.Ct. 1705, 1725, 1726, 60 L.Ed.2d 208 (1979); *Megapulse, Inc. v. Lewis,* 672 F.2d 959, 969–71 (D.C.Cir.1982). Plaintiff's brief, understandably, places most of its emphasis and discussion on the assertion that this court has jurisdiction over its action and hardly any emphasis or discussion on its rather naked transfer request. Indeed, plaintiff's responding brief (pp. 5–6) can be read to suggest that recourse to the District Court at the present time may be inappropriate since "this case does not involve threatened disclosure of Plaintiff's trade secrets." Plaintiff further asserts that "[b]ecause disclosure of Plaintiff's technical data has not been threatened, the instant case can be no more than a contract dispute." (p. 7). The point is that plaintiff's transfer request lacks persuasive intensity and depth.

Defendant, in its opposition, correctly points out that whether a case should be transferred from this court to a District Court rests on the sound discretion of this court. *Patterson v. United States,* 230 Ct.Cl. 932, 934 (1982); *Little River Lumber Co. v. United States,* 7 Cl.Ct. 492, 494 (1985). The basic test, set forth in section 1631, *supra,* for determining if a case should be transferred to another court is whether it would be in "the interest of

justice" to do so. *Goewey v. United States,* 222 Ct.Cl. 104, 108, 612 F.2d 539, 541 (1979).

In both *Chrysler v. Brown, supra,* and *Megapulse v. Lewis, supra,* recourse to the District Court was necessary and appropriate to prevent the impending and threatened disclosure to outsiders of data which the government contractors deemed restrictive. In *Megapulse v. Lewis, supra,* the threatened disclosure of a contractor's trade secrets set forth in data he supplied the government was the basis for the contractor's action to enjoin the government from disclosing said data.[6]

Plaintiff concedes that this case does not involve threatened disclosure of its trade secrets (plf's br. p. 5–6). Indeed, plaintiff notes that had the government threatened to disclose the technical data set out in the 38 drawings in question, plaintiff would have sought relief in a United States District Court to protect its property rights as it did with respect to certain contracts it had with the Department of the Navy for a different jet engine involving the Navy's decision to delete restrictive legends on drawings provided under the contract and to disclose said drawings to others. These concessions by plaintiff suggest rather persuasively that transfer of this case at this time might burden the District Court with unnecessary litigation. There is no indication the JCMP is going to do anything with the data in its possession. Plaintiff admits it does not face threatened disclosure. Under these particular circumstances, transfer of this case to the District Court is deemed inappropriate and would not be in the interest of justice. Should the JCMP in the future threaten disclosure, plaintiff has shown it has the experience to protect itself by seeking relief in the District Court at the appropriate time. It may well be that

it will never have to take that step in this case.

IV.

Based on the above discussion, and without oral argument, it is concluded that defendant's motion to dismiss must be granted since the court does not have jurisdiction over the action presented in plaintiff's complaint. The court further concludes that it would not be in the interest of justice to transfer this action to the District Court as requested by plaintiff. Accordingly, the clerk is directed to dismiss the complaint.

---

**6.** It is interesting to note in *Megapulse v. Lewis,* 672 F.2d 959, 967 (D.C.Cir.1982), that the Court of Appeals observed that the jurisdiction of the Court of Claims was limited to granting "monetary relief only" and "may neither grant declaratory * * * nor injunctive relief." Plaintiff argues herein, and states as much in its complaint, that its claims are contract claims and it is

relying on its contracts in support thereof. Such an argument in the District Court, if the existing complaint is transferred as requested, might serve to give pause to the District Court in the exercise of its discretion as to whether it would consider the matter. *See Id.* 672 F.2d at 969.