ROGERS TRUCK LINE, INC., Clifton
H. Rogers, and Phyllis Rogers

v.

The UNITED STATES.

No. 423–86C.

United States Claims Court.

Dec. 18, 1987.

Charles A. Walker, Fort Dodge, Iowa, for plaintiff.

Karen S. Fishman, Washington, D.C., with whom was Asst. Atty. Gen. Richard K. Willard, for defendant. Claire M. Schenk, Small Business Admin., of counsel.

## MEMORANDUM OPINION

LYDON, Senior Judge:

The question presented in this case is whether passage of the Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (1980) effected a compensable taking, under the Fifth Amendment of the Constitution, of plaintiffs' property. Plaintiffs'

property consisted of common carrier authorities it possessed to transport certain goods over designated routes. On April 29, 1987, defendant filed a motion for summary judgment directed at plaintiffs' complaint and a motion for judgment on its counterclaim in the amount of $165,072.07. Plaintiffs have filed no response to defendant's motions. On September 16, 1987, plaintiffs' attorney of record in this case, on his motion, was permitted to withdraw from the case.[*] By order dated September 16, 1987 (unpublished), the court directed plaintiffs to obtain new counsel. Plaintiffs were notified by certified mail. Plaintiffs were also directed in said order to notify the court on or before October 30, 1987, whether they intended to proceed further with this litigation. Plaintiffs were further advised in said order that if plaintiffs did not respond to the September 16, 1987, order by October 30, 1987, the court would rule on defendant's motions without the benefit of any submissions from plaintiffs. Since plaintiffs have failed to respond to the court's order of September 16, 1987, the court renders its decision herein without the benefit of submissions by plaintiffs.

### FACTS

There are three plaintiffs in this case: Rogers Truck Line, Inc. (Rogers Truck), Clifton H. Rogers (Clifton) and Phyllis Rogers (Phyllis). Clifton and Phyllis are married. Clifton is the president and owns 95 percent of the stock of Rogers Truck. Rogers Truck is an Iowa corporation and does business as a trucking company.

In 1977 Rogers Truck purchased from Mainliner Motor Express (Mainliner) common carrier authority to transport meat from Sioux City, Iowa to thirteen east coast states. Rogers Truck paid $100,000 plus attorney's fees for this authority. While awaiting Interstate Commerce Commission (ICC) approval of the transfer of authority from Mainliner, Rogers Truck leased the common carrier authority from Mainliner for 11 months at a cost of $90,-000.

On April 17, 1977 the Small Business Administration (SBA) approved a $200,000 loan for Rogers Truck. Of the loan proceeds, $125,000 was to pay for the above-mentioned authority and $75,000 was to be used for operating capital. This loan was evidenced by a note. It was secured by Rogers Truck giving SBA a security interest in all its assets, including the said common carrier authority. Additionally, Clifton and Phyllis personally guaranteed the note and gave SBA a mortgage on their personal residence to secure the guarantee.

In February 1978 Rogers Truck purchased common carrier authority from Logan Trucking, Inc. (Logan) to transport beer and wine from Trenton, N.J. to a number of midwestern states. The purchase price of this authority was $125,-887.25, plus attorney's fees. The total amount of attorney's fees for the two purchases was $59,922.75.

On July 1, 1980, the Motor Carrier Act, *supra*, took effect. This Act "deregulated" the trucking industry. Plaintiffs contend that the effect of the Act was to reduce the value of Rogers Truck's common carrier authorities from "$975,000 [the 1978 appraised value of the Rogers Truck authorities according to plaintiffs] to zero and was so onerous as to constitute a taking which constitutionally requires compensation."

On April 19, 1984 Rogers Truck's SBA loan became due. Rogers Truck owes $165,072.02 in principal plus interest on this loan.

Plaintiffs' complaint in this court was filed on July 1, 1986. Originally their complaint was filed in the United States District Court for the Northern District of Iowa, which court dismissed the complaint for lack of subject matter jurisdiction. In plaintiffs' complaint in this court, Rogers Truck seeks $975,000 plus an "additional amount to compensate for the delay * * * in payment for the property taken * * * " and/or a declaration that the SBA loans are null and void. Clifton and Phyllis want their guarantees to be declared null and void, an injunction preventing SBA from

[*] Charles A. Walker, Fort Dodge, Iowa, attorney of record for plaintiff.

foreclosing on their personal residence and damages for emotional distress.[1]

Defendant filed its answer on February 24, 1987. In its answer, it asserted a counterclaim for the principal and interest due on the SBA loan.[2] The amount due on said loan, as set out in the defendant's counterclaim (¶ 21) filed February 27, 1987, and admitted by plaintiffs in their answer to said counterclaim, is $165,072.07, plus interest as provided by the terms of the loan note.

One final item bears note. All three plaintiffs filed for bankruptcy. Rogers Truck was the debtor in one action and Clifton and Phyllis the debtors in another action. On February 4, 1987, the Bankruptcy Court for the Northern District of Iowa issued an Order, in response to the parties' joint motion, lifting the stay so as to allow the instant case to be pursued in this court. On February 20, 1987 the bankruptcy action relative to Clifton and Phyllis was dismissed.

These facts have been culled from plaintiffs' complaint, defendant's answer and counterclaim and plaintiffs' reply to defendant's counterclaim.

## DISCUSSION

The Fifth Amendment to the Constitution provides, *inter alia*, "nor shall private property be taken for public use without just compensation." This clause was "de-

signed to bar Government from forcing some people alone to bear public burdens which, in all fairness and justice, should be borne by the public as a whole." *Armstrong v. United States*, 364 U.S. 40, 49, 80 S.Ct. 1563, 1569, 4 L.Ed.2d 1554 (1960). *See also National Board of YMCA v. United States*, 395 U.S. 85, 89, 89 S.Ct. 1511, 1514, 23 L.Ed.2d 117 (1969); *United States v. Sponenbarger*, 308 U.S. 256, 266, 60 S.Ct. 225, 229, 84 L.Ed. 230 (1939).

■ Under the literal terms of the Fifth Amendment, in order for plaintiffs to be entitled to just compensation it must have a property interest that was taken, i.e., appropriated, by the government.[3] Therefore, it must be determined what, if any, property right plaintiffs possessed and whether the property was taken. Plaintiffs assert that its common carrier authorities were property. It appears that they could be viewed as property in that they are needed to engage in trucking operations. They appear to be subject to valuation. They are subject to lease and sale.

However, as discussed, *infra*, the extent of the property interest represented by the common carrier authorities is very important. They did not give plaintiffs an *exclusive* right to transport the designated goods over the designated routes. *See Bowman Transportation v. Arkansas—Best Freight System*, 419 U.S. 281, 298–99, 95 S.Ct. 438, 448, 42 L.Ed.2d 447 (1974);

1. This memorandum opinion deals only with the Fifth Amendment taking claim. It does not address the claims for injunctive and declaratory relief and the tort claim which are all beyond the jurisdiction of this court. 28 U.S.C. § 1491 (1982). This court has jurisdiction to grant injunctive and declaratory relief in certain limited situations not present in this case, i.e., under 28 U.S.C. § 1491(a)(3). Injunctive relief is available in "bid protest" cases, which are in no way related to the instant action. *See e.g., National Forge Co. v. United States*, 779 F.2d 665, 667 (Fed.Cir.1985); *United States v. John C. Grimberg*, 702 F.2d 1362, 1367 (Fed.Cir.1983); *Omega World Travel, Inc. v. United States*, 9 Cl.Ct. 623, 627 (1986). "Pure" declaratory relief, such as plaintiffs seek in their complaint is beyond the power of this court to grant. *Industrial Coatings v. United States*, 11 Cl.Ct. 161, 163 (1986); *Haynes Construction v. United States*, 10 Cl.Ct. 526, 528 (1986); *Williams Corp. v. United States*, 7 Cl.Ct. 726, 728–31 (1985). Tort claims are also

not within this court's jurisdiction. 28 U.S.C. § 1491(a)(1); *Somali Development Bank v. United States*, 205 Ct.Cl. 741, 749, 508 F.2d 817, 821 (1974). Only the corporate plaintiff, Rogers Truck Line, Inc. (Rogers Truck), seeks compensation for taking. Therefore, in the discussion section of this memo "plaintiff" refers to Rogers Truck.

2. This SBA loan has been due for quite some time. Clifton and Phyllis Rogers claim they are not liable on their guarantees because defendant has "destroyed" the value of Rogers Truck's collateral, i.e., the common carrier authorities. Clifton and Phyllis Rogers' contention appears to be without merit. *See United States v. Slezak*, 543 F.Supp. 63, 65–66 (N.D.Iowa 1981).

3. *See, e.g., Omnia Commercial Co. v. United States*, 261 U.S. 502, 510, 43 S.Ct. 437, 438, 67 L.Ed. 773 (1923); *Legal Tender Cases*, 79 U.S. (12 Wall.) 457, 551, 20 L.Ed. 287 (1870).

*A.L. Root Transportation, Inc. v. United States*, 280 F.Supp. 152, 157 (D.Vt.1968). Likewise, the authorities did not give plaintiffs a constitutionally protected freedom from competition. *See Law Motor Freight, Inc. v. C.A.B.*, 364 F.2d 139, 144 (1st Cir. 1966), *cert. denied*, 387 U.S. 905, 87 S.Ct. 1683, 18 L.Ed.2d 622 (1967); *A.L. Root Transportation, Inc. v. United States, supra*, 280 F.Supp. at 157. *See also Jaffe v. United States*, 220 Ct.Cl. 666, 669, 618 F.2d 122 (1979).

Plaintiffs' taking claim is premised on the effect it claims passage of the Act had on the value of its common carrier authorities. Prior to the Act, claim plaintiffs, the common carrier authorities were necessary to truck the specified commodities between the different locations. As pointed out above, these authorities did not ensure an exclusive right to engage in trucking operations between the designated locations. However, they were a requirement for trucking between those locations. *See e.g., Bowman Transportation v. Arkansas–Best Freight Systems, supra*. Therefore, these authorities obviously had some value to those engaged in the trucking industry. Although the authorities were originally awarded by the ICC to a trucking company, as the facts of this case demonstrate, they could subsequently be leased or sold to another company by the first company with ICC approval.

■ According to plaintiff, upon passage of the Act "any person who possessed a truck and who desired to transport over those routes formerly granted to Rogers Truck Line" was now free to do so. Plaintiff overstates the case. It is true that the Act eased carrier entry into the trucking industry. *Port Norris Express Co., Inc. v.*

*Interstate Commerce Comm'n*, 687 F.2d 803, 806 (3rd Cir.1982). However, it did not deregulate entry completely. *Id.* A would-be carrier still had to receive authority from the ICC under 49 U.S.C. § 10922. *Gamble v. Interstate Commerce Comm'n*, 636 F.2d 1101, 1102–03 (5th Cir. Unit B Feb. 1981). *See also, Port Norris Express Co. Inc. v. Interstate Commerce Comm'n, supra*, 687 F.2d at 806. The Act simply *amended* 49 U.S.C. § 10922 which provided the standards to be used in deciding whether to grant common carrier authority. *Watkins Motor Lines, Inc. v. Interstate Commerce Comm'n*, 641 F.2d 1183, 1185–86 (5th Cir.1981).

■ Plaintiffs maintain that after the Act its common carrier authorities were no longer worth anything. This belief stems from the erroneous premise, set forth above, that "any person with a truck" could engage in trucking operations after passage of the Act. However, it probably is not unfair to say that the value of plaintiffs' common carrier authorities was reduced because obtaining carrier authorities became easier.[4] The purpose of the Act is to promote competition among motor carriers, *Central & Southern Motor Freight Tariff Ass'n v. United States*, 757 F.2d 301, 318 (D.C.Cir.1985). *See also* 49 U.S.C. § 10101.

In any event, it is plaintiffs' contention that because the value of its common carrier authorities was destroyed they were taken and plaintiffs are entitled to compensation under the Fifth Amendment.[5]

■ As described above, under the literal terms of the Fifth Amendment it would appear that a taking has not occurred in the present case because the government

---

**4.** The Motor Carrier Act of 1980, Pub.L. No. 96–296, 94 Stat. 793 (Act) relaxed the burden on carriers seeking Interstate Commerce Commission (ICC) certificates (of authority to truck). *Central Transport, Inc. v. United States*, 694 F.2d 968, 971 (4th Cir.1982). Prior to the Act, an applicant had to demonstrate its service was required by present or future public convenience or necessity. *Id.* After the Act, an applicant only had to show its service would serve a useful public purpose, be responsive to public demand and need, and was fit, willing and able to provide transportation and comply with the

laws and regulations. However, a carrier was still required to obtain a certificate to be authorized to perform transportation services subject to the jurisdiction of the ICC. *Id.;* 49 U.S.C. § 10922 (1982).

**5.** In dealing with the taking issue, the court shall proceed under the assumption that plaintiffs had a property interest in the common carrier authorities which became less valuable subsequent to passage of the Act.

has not appropriated plaintiffs' property. True, plaintiffs' property, i.e., its common carrier authorities, may no longer have the value they once did. However, the government may execute laws or programs that adversely affect recognized economic values without incurring a Fifth Amendment obligation to compensate the owner, because the government has not acquired any property. *See Thomas v. United States,* 231 Ct.Cl. 984, 986–87 (1982).

■■■ The Supreme Court has recognized for quite some time that regulation of property can be so burdensome as to constitute a taking. *See Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922). However, this case does not present such a situation. In fact, it really presents the opposite situation, i.e., a relaxation of regulation.[6] Passage of the Act was a general act of the sovereign, applicable to the trucking industry as a whole. It was not directed at any individual or company. A general act of the sovereign usually does not establish a liability for a taking. *See Huerta v. United States,* 212 Ct.Cl. 473, 484 n. 2, 548 F.2d 343, 348 n. 2 (1977), *cert. denied,* 434 U.S. 828, 98 S.Ct. 108, 54 L.Ed.2d 88 (1977). "[A]n interference with the use of property [is not] a compensable taking if it is the result of a sovereign act." *Finks v. United States,* 184 Ct.Cl. 480, 489, 395 F.2d 999, 1004 (1968), *cert. denied,* 393 U.S. 960, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968). *See also Franco–Italian Packing Co. v. United States,* 130 Ct.Cl. 736, 746–47, 128 F.Supp. 408, 414 (1955). The Act may have "interfered" with plaintiffs' property in that it made the authorities less valuable. However, as the cases show, this is not enough to constitute a taking.

■■■ There are many laws and government operations which have an injurious effect on, or even destroy, the value of property but are not considered takings. *Omnia Commercial Co. v. United States,* 261 U.S. 502, 43 S.Ct. 437, 67 L.Ed. 773 (1923). The taking clause of the Fifth

Amendment has no bearing on laws that *indirectly* work a harm on individuals. *Id.* at 510, 43 S.Ct. at 438.

In *Omnia Commercial Co. v. United States, supra,* the plaintiff had a contractual right to purchase steel from a vendor at below market price. However, because the country was involved in World War I the government requisitioned all available steel and the vendor was prohibited from selling its steel to the plaintiff (at the favorable contract rate). The plaintiff sued the government, alleging a taking.

The Supreme Court held that there had been no taking. The government, the Supreme Court noted, had not acquired the plaintiff's property, i.e., its contract right to purchase steel at below the market price. *Omnia Commercial Co. v. United States, supra,* 261 U.S. at 511, 43 S.Ct. at 438. What the government had acquired, the Supreme Court stressed, was the vendor's steel. *Id.* at 510, 43 S.Ct. at 438. While the result of this acquisition was to make performance of the contract between the plaintiff and the vendor impossible, *id.* at 511, 43 S.Ct. at 438, the Supreme Court held that "[f]rustration and appropriation are essentially different things." *Id.* at 513, 43 S.Ct. at 439. *See also TOFC, Inc. v. United States,* 231 Ct.Cl. 182, 191–92, 683 F.2d 389, 395 (1982); *Kearney & Trecker Corp. v. United States,* 231 Ct.Cl. 571, 578, 688 F.2d 780, 783 (1982), *cert. denied,* 460 U.S. 1051, 103 S.Ct. 1498, 75 L.Ed.2d 929 (1983); *Florida Rock Industries, Inc. v. United States,* 791 F.2d 893, 903 (Fed.Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 926, 93 L.Ed.2d 978 (1987). Only when there is an appropriation of property by the government is the Taking Clause implicated. *Id.* at 510, 43 S.Ct. at 438. "[F]or consequential loss or injury resulting from lawful government action, the law affords no remedy." *Omnia Commercial Co. v. United States, supra,* 261 U.S. at 510, 43 S.Ct. at 438. *See also, TOFC, Inc. v. United States, supra,* 231 Ct.Cl. at 191–92, 683 F.2d at 395; *Hartwig*

---

**6.** Plaintiff attempts to turn the holding in *Pennsylvania Coal Co. v. Mahon,* 260 U.S. 393, 415, 43 S.Ct. 158, 160, 67 L.Ed. 322 (1922) on its head by saying "[t]he *deregulation* * * * was so onerous as to constitute a taking * * *." (emphasis supplied).

*v. United States,* 202 Ct.Cl. 801, 809, 485 F.2d 615, 619–20 (1973) (cases collected); *Rowland v. United States,* 8 Cl.Ct. 267, 271 (1985), *aff'd without opinion,* 790 F.2d 92 (Fed.Cir.1986). Thus the plaintiff in *Omnia Commercial Co.* was not entitled to any compensation because he had no property taken.

The instant case is strikingly similar to *Omnia Commercial Co. v. United States, supra.* The effect of the Act on plaintiffs was to reduce the value of its common carrier authorities. However, the government did not appropriate, i.e., take plaintiff's property, i.e., the authorities. Plaintiffs suffered a consequential loss (reduction in the value of its common carrier authorities) as a result of a lawful government action. As *Omnia Commercial Co. v. United States, supra,* teaches, a plaintiff is not entitled to compensation under the Fifth Amendment for this type of loss. *Id.* at 510, 43 S.Ct. at 438. *See also Galloway Farms, Inc. v. United States,* 834 F.2d 998, 1001–03 (Fed.Cir.1987).

The connection between the Act and any loss in value suffered by plaintiffs is indirect and outside the scope of the just compensation clause of the Fifth Amendment. *See Southern Counties Gas Co. v. United States,* 141 Ct.Cl. 28, 31, 157 F.Supp. 934, 935–36 (1958), *cert. denied,* 358 U.S. 815, 79 S.Ct. 23, 3 L.Ed.2d 58. Plaintiffs' common carrier authorities may have become less valuable because of the changed environment in the trucking industry brought about by the Act, but that does not constitute a taking. *Id.* It was simply a consequential and non-compensable loss. *See id.*

Of relevance to the instant case are two closely related cases which arose from the same set of facts. They follow the analysis set forth in *Omnia Commercial Co. v. United States, supra.*

In *Jackson Sawmill Co. v. United States,* 580 F.2d 302 (8th Cir.1978), *cert. denied,* 439 U.S. 1070, 99 S.Ct. 839, 59 L.Ed.2d 35 (1979), the plaintiffs were bondholders. The bonds had been issued by the

City of East St. Louis, Illinois, to raise money to pay in part for an expressway extension to a toll bridge that carried traffic from East St. Louis across the Mississippi River to St. Louis, Missouri. The State of Illinois funded the remaining cost of the extension. The opinion reports that the United States government "encouraged" the construction of the extension and planned to incorporate it into the interstate highway system. *Id.* at 304. However, the United States provided no funding.

The bonds held by the plaintiffs were issued pursuant to a trust agreement executed between East St. Louis and a trust company. The agreement provided that the bonds (both principal and interest) would be satisfied from the tolls and other revenues collected on the toll bridge.[7] It also stipulated that the city would not permit construction of another, competing bridge. However, later on the city (along with Illinois and the United States) decided to build another bridge. Although the opinion does not spell out what roles were assumed by the various governments, the new (free) bridge was opened about 11 years after execution of the trust agreement referred to above. The new (free) bridge was fully integrated into the interstate highway system. The old (toll) bridge saw a marked drop off in traffic after the new (free) bridge was constructed. Approximately 6 years after the new (free) bridge opened, the city defaulted on its bonds.

The plaintiffs sued, *inter alia,* the United States, alleging, *inter alia,* a taking. The District Court dismissed the complaint for failure to state a claim upon which relief could be granted. The Eighth Circuit upheld the decision. On appeal the plaintiffs argued that diversion of traffic, from the toll bridge, caused direct damage to their "vested property rights." The court held that the United States had helped to construct a bridge. However, it had taken nothing, directly or indirectly, from the plaintiffs. *Jackson Sawmill Co.*

---

7. The trust agreement provided that the toll rates would be subject to regulation by the United States.

*v. United States, supra,* 580 F.2d at 307. The Fifth Amendment refers only to direct appropriation and not consequential injuries resulting from the government's lawful power. *Id.,* citing *Legal Tender Cases,* 79 U.S. (12 Wall.) 457, 551, 20 L.Ed. 287 (1870).

The court held that no matter what label the plaintiffs chose for their supposed property interest: "franchise", "easement", "lien" or "contract right", they did not possess a constitutionally protected interest in a monopoly over traffic between East St. Louis and St. Louis. *Jackson Sawmill Co. v. United States, supra,* 580 F.2d at 307. The only property interest the plaintiffs possessed were two convenants with the City of East St. Louis. One gave them the exclusive right to the toll bridge revenues and the other stipulated that the city would not permit construction of a bridge that interfered with their revenue rights. *Id.* The United States did not acquire these property rights and therefore the plaintiffs were entitled to no compensation.

*Jaffe v. United States, supra,* 220 Ct.Cl. 666, 618 F.2d 122, is a case that is closely related to *Jackson Sawmill Co. v. United States, supra.* In *Jaffe v. United States, supra,* the plaintiffs were another group of bondholders. They claimed the defendant "encouraged and assisted" the city and state in constructing the new bridge. According to the plaintiffs, the defendant's actions amounted to a taking.

Like the Eighth Circuit in the *Jackson Sawmill Co.* case, the Court of Claims found that the plaintiffs had no property right against traffic diversion, the defendant took nothing directly or indirectly from the plaintiffs, and the Fifth Amendment does not cover consequential injuries resulting from an exercise of lawful power. *Jaffe v. United States, supra,* 220 Ct.Cl. at 668, 618 F.2d 122. The defendant had not appropriated the plaintiffs' property. *Id.*

at 669, 618 F.2d 122.[8] "The fact that lawful Government action injures or even destroys property or a business does not convert that action into a constitutional taking." *Id.* at 668, 618 F.2d 122. Consequential damages are not compensable under the Fifth Amendment. *Id.; see, e.g., Hartwig v. United States, supra,* 202 Ct.Cl. at 809, 485 F.2d at 619–20 (cases collected).

These two "bridge cases" are very instructive in considering the case at bar. In those cases, the plaintiffs possessed a property interest of some nature. Actions by the government may have served to help make the plaintiffs' property less valuable. However, the government did not appropriate the property interest. Rather, the harm suffered by the plaintiffs was a consequential result of government actions. As these cases show, such harm does not rise to the level of a taking. *Jackson Sawmill Co. v. United States, supra,* 580 F.2d at 307; *Jaffe v. United States,* 220 Ct.Cl. at 668–69, 618 F.2d 122.

Likewise, in the case at bar, the value of plaintiffs' common carrier authorities may have been substantially reduced by the Act. However, this does not mean that a taking has occurred. The government did not acquire plaintiffs' property, i.e., its common carrier authorities. It simply engaged in a legitimate government activity, i.e., passage of the Act, the consequential result of which was to render plaintiffs' common carrier authorities less valuable. As the case law cited above clearly points out, this is not the type of damage that implicates the Fifth Amendment's Taking Clause.

Furthermore, the opinions in *Jackson Sawmill Co. v. United States, supra,* and *Jaffe v. United States, supra,* help to show the extent of plaintiffs' property interest and teach that a taking claim cannot be supported by asserting ownership in a property interest that is different and more expansive than the one actually possessed. As stated previously, the court assumes

---

**8.** In *Jaffe v. United States,* 220 Ct.Cl. 666, 669, 618 F.2d 122 (1979) the Court of Claims found that the plaintiffs' only property interest was in their bonds. As discussed above, the Eighth Circuit found that the plaintiffs' property interests were the covenants in the trust agreement.

*Jackson Sawmill Co. v. United States,* 580 F.2d 302, 307 (8th Cir.1978). Despite this difference, the important point is that both cases expressly recognized that the plaintiffs' property interest was *not* a monopoly on the traffic flow, as the plaintiffs in those cases claimed.

*arguendo* plaintiffs have a property interest of some value in its common carrier authorities which allow plaintiffs to engage in certain, designated trucking operations. But the cases, cited *supra,* are just as clear in holding that authorities such as these do not confer on plaintiffs a monopoly over such transportation services. The ICC could grant additional, competing authority, even before passage of the Act. *See United States v. Dixie Highway Express, Inc.,* 389 U.S. 409, 411–12, 88 S.Ct. 539, 540–41, 19 L.Ed.2d 639 (1967) (per curium).

Plaintiffs have made no claim that they cannot continue to truck under their existing common carrier authorities. These authorities were never taken by the government. The Act might have a prospective impact on plaintiffs' property but without more that is not a taking. *See Mulford v. Smith,* 307 U.S. 38, 51, 59 S.Ct. 648, 653–54, 83 L.Ed. 1092 (1939). It may be that subsequent to passage of the Act there are more carriers competing with plaintiff. However, plaintiff does not have a constitutionally protected freedom from competition. *See Law Motor Freight, Inc. v. C.A.B., supra,* 369 F.2d at 144; *A.L. Root Transportation, Inc. v. United States, supra,* 280 F.Supp. at 157. *See also Jackson Sawmill Co. v. United States, supra,* 580 F.2d at 307 and *Jaffe v. United States, supra,* 220 Ct.Cl. at 669, 618 F.2d 122.

The "sovereign acts" defense, which has been raised in contexts other than takings case, is also instructive in dealing with the case at bar. For example, in *Air Terminal Services, Inc. v. United States,* 165 Ct.Cl. 525, 330 F.2d 974, *cert. denied,* 379 U.S. 829, 85 S.Ct. 57, 13 L.Ed.2d 38 (1964), the plaintiff entered into a contract with the defendant to run the parking concession at National Airport. Subsequent to execution of the contract, the defendant redesigned the roadways at the airport thereby creating room for it to mark off some parking spaces with parking meters. The defendant received the revenue from the newly placed parking meters, in direct competition with the plaintiff. This competition, claimed the plaintiff, caused it to incur a loss in the performance of its contract.

The Court of Claims found that the regulation of traffic and parking by the defendant by use of parking meters was primarily a public and general act of sovereignty performed for the public good. *Air Terminal Services, Inc. v. United States, supra,* 165 Ct.Cl. at 536, 330 F.2d at 980. As such the defendant was not liable to the plaintiff.

In *Air Terminal Services, Inc. v. Untied States, supra,* the plaintiff's claim was based on breach of contract. The court found that the defendant's sovereign act did not constitute a breach of the implied terms in the contract. *Id.* at 536, 330 F.2d at 980. However, like the taking cases discussed earlier in which the sovereign acts doctrine was referenced, *Air Terminal Services, Inc. v. United States, supra,* is another example of the government engaging in activities within its sovereign capacity for which it cannot be held liable. *See id.* (cases collected); *see also Hallman v. United States,* 107 Ct.Cl. 555, 556, 68 F.Supp 204 (1946); *D.R. Smalley & Sons v. United States,* 178 Ct.Cl. 593, 597, 372 F.2d 505, 507 (1967), *cert. denied,* 389 U.S. 835, 88 S.Ct. 45, 19 L.Ed.2d 97 (1967).

It is clear plaintiffs are not entitled to the relief it seeks in this action. Nothing has been called to the court's attention which would warrant denial of defendant's counterclaim. As a result, defendant is entitled to judgment on its counterclaim.

## CONCLUSION

For reasons discussed above, defendant's motion for summary judgment is granted. The clerk is directed to enter judgment dismissing plaintiffs' complaint and is further directed to enter judgment for defendant on its counterclaim against plaintiffs for $165,072.07, plus interest thereon as provided by the terms of the loan agreement between Small Business Administration and plaintiffs, Rogers Truck Line, Inc. No costs.